BEXAR–MEDINA–ATASCOSA COUN-
TIES WATER IMPROVEMENT
DISTRICT NO. 1, Appellant,

v.

George J. WALLACE and wife, Joan
Wallace, Appellees.

No. 16520.

Court of Civil Appeals of Texas,
San Antonio.

April 22, 1981.

Rehearing Denied July 1, 1981.

Les Mendelsohn, Branton & Mendelsohn, San Antonio, for appellant.

Robert Wehmeyer, Darden & Wehmeyer, Bandera, for appellees.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment denying a permanent injunction.

Appellant, Bexar-Medina-Atascosa Counties Water Improvement District No. 1 (hereafter referred to as BMA), brought suit against appellees, the Wallaces, to prevent the Wallaces from constructing a septic tank on land below the "high water mark"[1] around Medina Lake, a lake operated by BMA under authority of the Texas Legislature.[2] BMA argued that it had (1) authority delegated to it by the Legislature under the Texas Water Code[3] to prevent pollution of water under its ownership or control and (2) actual ownership of land, and could enjoin the Wallaces from trespassing on its property.

During the bench trial, BMA maintained that the sewage generated by the septic tank would pollute Medina Lake in violation of BMA regulations. Additionally, both BMA and the Wallaces claimed ownership of the tract of land where the septic tank was to be located; BMA under a warranty deed executed in 1917, and the Wallaces under a quitclaim deed executed in 1976. The Wallaces asserted that the BMA regulations, purporting to proscribe the installation of this septic tank, were ineffectual and void.

The trial court denied BMA the permanent injunction and entered a take-nothing judgment. The court held that BMA (1) lacked extraterritorial jurisdiction over land existing in Bandera County and (2) did not have title to the disputed tract of land because of an insufficient description in the deed under which it asserted title.

BMA perfected their appeal to this court contending that the trial court erred in denying injunctive relief and in granting title to the disputed land to the Wallaces. BMA raises nine points of error in this appeal.[4] The trial court issued the follow-

---

1. The "high water mark" refers to those lands lying below the 1,084-foot contour/elevation line.

2. BMA was created under authority granted the Texas Legislature in Article III § 52, and Article XVI § 59, of the Texas Constitution.

3. Tex.Water Code Ann. §§ 26.001, 26.121, 26.-124, 55.242, 55.253 (Vernon 1972).

4. The nine points of error are as follows:
   *POINT OF ERROR NO. ONE*
   The Trial Court Erred in Holding that BMA did not establish title to the land (and thereby the right to prevent the construction of the septic tank).
   *POINT OF ERROR NO. TWO*
   The Trial Court Erred in failing to enter Judgment for the appellant because the appellees trespassed upon appellant's land.
   *POINT OF ERROR NO. THREE*
   The Trial Court Erred in failing to enter Judgment for appellant because the appellant's chain of title is complete and not barred by the statute of frauds.
   *POINT OF ERROR NO. FOUR*
   The Trial Court erred in failing to enter Judgment for appellant because the land in question is within the regulatory jurisdiction of appellant.
   *POINT OF ERROR NO. FIVE*
   The Trial Court Erred in failing to enter a Declaratory Judgment for appellant, as prayed for, declaring that appellees could not construct the septic tank under the reservations contained in the 1917 deed.
   *POINT OF ERROR NO. SIX*
   The Trial Court Erred in failing to permanently enjoin appellees from constructing the septic tank or tanks.
   *POINT OF ERROR NO. SEVEN*
   The Trial Court's Finding that the 1917 and 1925 deed descriptions are insufficient is against the great weight and preponderance of the evidence.
   *POINT OF ERROR NO. EIGHT*

ing Findings of Fact and Conclusions of Law:

## I. FINDINGS OF FACT

A. The tract of land on controversy upon which the site of Defendants' proposed septic tank system is located is described in part as follows:

'[I]n Bandera County, Texas, being out of Survey No. 288, E. Pennington, Original Grantee, Abstract No. 1050, located on the north shore of Medina Lake and a part of that certain 13.76 acre tract conveyed by warranty deed dated Jan. 18, 1917, from Joseph F. Spettel, Louis Schorp, John J. Schorp, Agnes V. Schorp, and Louis Schorp, as Guardian of the minor Agnes V. Schorp, to The Medina Valley Irrigation Company, a corporation, as recorded in Volume G–1, pages 308–313, Bandera County Deed records, and being out of that same 13.76 acre tract, as described in a conveyance dated Sept. 29, 1925, from Roy S. Osgood Et Al, trustees of the San Antonio Trust to Bexar-Medina-Atascosa Water Improvement District No. 1, as recorded in Volume S–1, pages 124–215, Bandera County deed records and being a part of Lot 2, Block 95 of the Avalon Subdivision, as platted and filed for record in the Bandera County plat records in volume 1, page 8, and dated May 14, 1928 . . . .'.

B. Plaintiff, Bexar-Medina-Atascosa Counties Water Improvement District No. 1, is the successor of The Medina Valley Irrigation Company.

C. The tract of 13.76 acres conveyed by Warranty Deed from Joseph F. Spettle, et al to The Medina Valley Irrigation Company, dated January 18, 1917, and of record in Volume G–1, Pages 308–313, Deed Records of Bandera County, Texas, is described in such Deed as follows:

'13.76 acres, more or less, of land off of the South side of Survey No. 288–E. Pennington, Bandera County, Texas, more particularly described by metes and bounds as follows:

Beginning at point '2', thence: N. 3 deg. 50' E. 250' N. 16 deg. 55' W. 126' W. 126' N. 19 deg. 45' W. 118' N. 28 deg. 28' E. 97' N. 7 deg. 00' E. 111' N. 22 deg. 00' E. 146' N. 70 deg. 50' E. 50' S. 51 deg. 05' E. 108' S. 74 deg. 30' E. 204' N. 83 deg. 35' E. 208' S. 50 deg. 40' E. 288' S. 36 deg. 00' E. 279' S. 63 deg. 10' E. 272' S. 80 deg. 54' W. 1231' to point of beginning.

D. The tract of 13.76 acres conveyed by Deed from Roy S. Osgood Et Al to Bexar-Medina-Atascosa Water Improvement District No. 1, dated September 29, 1925, and of record in Volume S–1, Pages 124–215, Deed Records of Bandera County, Texas, is described in such Deed as being in Bandera County, Texas, and as follows:

'TRACT 60: 70.55 acres out of Survey 288 in the name of E. Pennington and particularly described in Deed to the Medina Valley Irrigation Company from Jos. F. Spettle et al, dated January 18th, 1917, recorded Vol. G–1, P. 308, Deed Records.'

E. The site of Defendants' proposed septic tank system is in Bandera County, below the 1084-foot contour line and within 100 feet of the water's edge of Medina Lake.

F. Bandera County is not within the territorial boundaries of Plaintiff, Bexar-Medina-Atascosa Counties Water Improvement District No. 1.

## II. CONCLUSIONS OF LAW

A. Plaintiff failed to establish its title to the tract in controversy and, consequently, is not entitled to have Defendants' alleged trespass upon such tract enjoined because the description of the tract

---

The 1917 and 1925 deed descriptions are, as a matter of law, sufficient to locate the land conveyed.

*POINT OF ERROR NO. NINE*

The Trial Court's Finding that the land in question is outside the geographical boundary of BMA is against the great weight and preponderance of the evidence.

of 13.76 acres in the Warranty Deed from Joseph F. Spettle, et al to The Medina Valley Irrigation Company, dated January 18, 1917, and of record in Volume G–1, Pages 308–313, Deed Records of Bandera County, Texas, which is an indispensable link in Plaintiff's chain of title, is not sufficient to satisfy the Statute of Frauds. The beginning point of such tract is described merely as "point '2'" and there are no means or data contained in the description by which such point may be located on the ground with reasonable certainty. The remaining calls comprising the description are for courses and distances without reference to any objects, monuments or existing writings. None of such calls can be located on the ground without reference to the beginning point. Because of the insufficiency of the field notes, the only descriptive data contained in the Deed are that the tract contains 13.76 acres, more or less, and is off the South side of Survey No. 288, E. Pennington, in Bandera County, Texas. Such description does not furnish within itself, or by reference to some other existing writing, the means or data by which the tract may be identified with reasonable certainty. Because the Deed does not contain the nucleus of a valid description, it is void. Plaintiff's having failed to discharge its burden of identifying the land that it claims, of establishing the location of such land, and of showing the extent of its interest in the tract in controversy, Plaintiff should take nothing in its trespass to try title action. Consequently, Plaintiff is not entitled to have Defendants' alleged trespass upon such land enjoined because Plaintiff has failed to show that its right of possession is superior to that of Defendants'.

B. Because the site of Defendants' proposed septic tank system is located in Bandera County and outside the geographical boundaries of Plaintiff, Plaintiff is not entitled to injunctive relief under Sec. 26.124, V.T.C.A., Water Code.

C. Plaintiff is not entitled to enforce by injunction its rules and regulations against Defendants under Sec. 55.242(1), V.T.C.A., Water Code, because the site of Defendants' proposed septic tank system is located outside the territorial boundaries of Plaintiff. Plaintiff is a "municipal corporation," and its rules and regulations "shall be considered to be similar in nature to valid penal ordinances of a city." Without express legislative authority, the ordinances of a municipal corporation have no application and cannot be enforced outside the territorial boundaries of the municipality. [citations omitted]

Points of error one, two, three, five, six, seven and eight either directly or indirectly involve the question of title to the 13.76–acre tract. In those points of error, BMA argues that the trial judge erred in holding that the description of the 13.76–acre tract, contained in BMA's 1917 and 1925 deeds, was insufficient to locate the land conveyed.

The trial court correctly held that the description of the 13.76–acre tract contained in the pertinent deeds is insufficient to locate the land on the ground.

The deed to BMA, dated September 29, 1925, purports to convey:

TRACT 60: 70.55 acres out of Survey 288 in the name of E. Pennington and particularly described in the deed to the Medina Valley Irrigation Company from Jos. F. Spettle et al, dated January 18th, 1917, recorded Vol. G–1, P. 308, Deed Records.

The 1917 deed from Spettles to Medina Valley Irrigation Company conveyed three separate tracts. The first is a tract of 50.18 acres "off of the East side and out of the Southeast corner of Survey No. 288—E. Pennington, Bandera County, Texas, more particularly described as follows: Beginning at point '1', thence S. 80 deg. . . . to point of beginning."

The second tract, which is the 13.76–acre tract involved here, is referred to as being "off of the South side of Survey No. 288—E. Pennington", and is described by metes and bounds as follows:

Beginning at point '2', thence: N. 3 deg. 50' E. 250' N. 16 deg. 55' W. 126' . . . S. 80 deg. 54' W. 1231' to point of beginning.

The third tract, consisting of 6.61 acres "out of the Southwest Corner of Survey No. 288—E. Pennington," is described in the metes and bounds description as "Beginning at a point '3'."

The 1917 deed is completely silent concerning the locations of points "1", "2" and "3", nor does it contain any reference to any instrument, recorded or not, which furnishes guidance in locating the starting points of the descriptions. It may reasonably be argued that point "1", referred to as the starting point for the description of the 50.18–acre tract, can be assumed to be the southeast corner of Survey 288, since that tract is referred to as being "off" the east side and "out of the Southeast corner" of the survey. Similarly, it perhaps can be assumed that point "3", used in the description of the tract of 6.61 acres, refers to the southwest corner of the survey. But the deed furnishes no such clues as to the location of point "2" which is used in the description of the 13.76–acre tract involved in this case. The descriptive statement that the tract is "off the South side" of the survey, while it may be sufficient to indicate that point "2" lies somewhere along the south line of the survey, does not locate it on such south line with anything approaching even a reasonable degree of accuracy.

■ It is true that the only surveyor who testified stated unequivocally that he had located the 13.76–acre tract on the ground. But he made no effort to show how he had determined a point of beginning or any other "turning point" when he "located" the land. While it is well settled that the descriptive words in a conveyance should be given a liberal construction in order that the conveyance may be upheld, and that parol evidence is admissible to explain the descriptive words and to identify the land, the instrument itself must contain "a 'nucleus of description' and the parol testimony must directly be connected with the descriptive data." *Smith v. Sorelle*, 126 Tex. 353, 358, 87 S.W.2d 703, 705 (1935). When more than this is required, the description in the instrument of convey-

ance is insufficient. 126 Tex. at 358, 87 S.W.2d at 705. The above rule from *Sorelle* was approved and applied by the Texas Supreme Court in *Jones v. Mid-State Homes, Inc.*, 163 Tex. 229, 231–32, 356 S.W.2d 923, 924–25 (1962). In that case the surveyor testified that while the land could not be located on the ground from the description in the conveyance, he had located the land by reference to a plat in the tax collector's office. In holding that the surveyor's testimony did not cure the defect in the description, the Supreme Court pointed out that the instrument of conveyance contained no reference to the plat.

It is clear that the surveyor's testimony concerning the location of the land in question is based, to a large degree, on a consideration of lots in the Avalon Subdivision, which is, at least in part, located in Survey 288. The plat of such division is in evidence. However, the deed with which we are here concerned contains no reference to such subdivision or the plat, and there is no evidence that the subdivision was in existence in 1917.

In its brief BMA argues that "any confusion that may exist because of the references" to various points, such as point "2" in the deed description "is quickly dispelled by pointing out that these are obviously references to designated meridian descriptions." There is nothing in the evidence which even tends to suggest that the term "point '2'" refers to any meridian, true or magnetic, and the testimony of the surveyor does not indicate that he located the land by referring to a particular meridian which "point '2'" suggested to him to be the starting point.

In support of this contention BMA calls our attention to *Parker v. T. O. Sutton & Sons*, 384 S.W.2d 433 (Tex.Civ.App.—Beaumont 1964, no writ), and to the annotation, *Deeds—Magnetic or True Meridian*, 70 A.L. R.3d 1220 (1976). *Parker* does not support the argument that point "2" must be, or even should be, considered as referring to a meridian. The opinion merely holds that a court may take judicial notice of the fact that the variation between magnetic north

and true north constantly changes and that, therefore, a second surveyor who had surveyed the land in 1961 had not acted incorrectly when he used a variation different from that used by a surveyor who had laid out the boundaries in 1842, since, had he used the same variation used in 1842 he would have been unable to follow the footsteps of the original surveyor. While the opinion refers to evidence concerning "the line Point 2 to Point 5", the opinion does not intimate that "point 2" and "point 5" referred to certain meridian descriptions. *Parker, supra* at 435. Nor does not annotation in 70 A.L.R.3d support BMA's argument. That annotation considers only the question whether, in locating the boundaries of a tract of land, the description in the deed relates "to magnetic or true meridian of the compass." 70 A.L.R.3d at 1221.

*Parker* is merely a recognition of the fact that a surveyor who is rerunning old lines must determine the difference in declination between the date of the prior survey and the date of the present one, and that all bearings must be corrected by this difference. C. B. Breed, Surveying pp. 37–8 (1942). The findings of the trial court are correct and appellant's points of error one, two, three, five, six, seven and eight are overruled.

By its two remaining points of error, BMA contends that the trial court erred in failing to enter judgment for BMA because the land in question is within the regulatory jurisdiction of BMA. In our opinion, the findings of the trial court are correct and appellant's remaining points of error are overruled.

The Texas Water Quality Control Act provides that no person may "discharge sewage into or adjacent to any water in the state ...." Tex.Water Code Ann. § 26.121 (Vernon Supp.1980). The general authority for enforcement of this provision is provided by section 26.123 which authorizes lawsuits by the Texas Department of Water Resources seeking injunctive relief and civil penalties for violations of the Code. Section 26.124(a) of the Code grants these enforcement powers to local governments in district court proceedings:

Whenever it appears that a violation or threat of violation of any provisions of Section 26.121 of this code ... has occurred or is occurring within the jurisdiction of the local government, *exclusive of its extraterritorial jurisdiction.* (Emphasis added)

■ "Local government" as the term is used in the Code includes a water district or authority acting under Article III, section 52, or Article XVI, section 59, of the Texas Constitution. Tex.Water Code Ann. § 26.-001(18) (Vernon Supp.1980).

BMA was created under Chapter 87, General Laws of 1917, which called for the establishment of water improvement districts by county commissioners' courts in their respective counties. The State Board of Engineers by its order created BMA on or about December 30, 1924, following a petition for the canvassing of an election in Bexar, Medina and Atascosa Counties. Bandera County was not included. There is no evidence presented to indicate that BMA has ever expanded its boundaries and become an authorized water improvement district in Bandera County.

As applied in the statutes governing water improvement districts, the term "extraterritorial jurisdiction" is found in section 55.291 of the Texas Water Code, which gives water districts limited authority to buy and hold property rights a mile outside of their boundaries. The enforcement statute, section 26.124 of the Code, does not authorize, however, any enforcement authority beyond a water district's boundaries. It explicitly denies the remedy of bringing suit where a violation of section 26.121 is being committed or threatened "exclusive of its extraterritorial jurisdiction." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 680 (Tex.1979).

■ The authority of land governments under the Code, including the power to bring enforcement actions, is expressly limited to the area within the territorial jurisdiction of those particular local governments. Tex.Water Code Ann. §§ 26.124,

26.174 (Vernon Supp.1980). Clearly, section 26.124 does not authorize BMA to initiate the action against the Wallaces since the location of the alleged violation is within Bandera County and outside the boundaries and jurisdiction of BMA.

The judgment of the trial court is affirmed.