ACCEPTED
04-14-00758-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/15/2015 9:38:17 PM
KEITH HOTTLE
CLERK

NO. 04-14-00758-CV

# Fourth Court of Appeals
# San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/15/15 9:38:17 PM
KEITH E. HOTTLE
Clerk

**John A. Lance, Debra L. Lance,**
**F.D. Franks and Helen Franks,**

Appellants

v.

**Judith and Terry Robinson, Gary and Brenda Fest,**
**Virginia Gray, Butch Townsend, and**
**Bexar-Medina-Atascosa Counties Water Control and**
**Improvement District No. 1,**

Appellees

From the 198th Judicial District Court in Bandera County, Texas
Hon. M. Rex Emerson Presiding

**BRIEF OF APPELLEES JUDITH AND TERRY ROBINSON, GARY AND
BRENDA FEST, VIRGINIA GRAY, AND BUTCH TOWNSEND**

**Stephan B. Rogers**
SBN 17186350
**Kelly P. Rogers**
SBN 00788232
**Ross S. Elliott**
SBN 24080685

**ROGERS & MOORE, PLLC**
309 Water St., Ste 201
Boerne, TX 78006
(830) 816-5487
Fax: (866) 786-4777

*steve@rogersmoorelaw.com    kelly@rogersmoorelaw.com    ross@rogersmoorelaw.com*

**Oral Argument Requested**

# Identity of Parties & Counsel Supplemented

Appellants' statement of identity of parties and counsel is supplemented and corrected as follows:

1. The address for Rogers & Moore, PLLC has a new suite number.
> Rogers & Moore, PLLC
> 309 Water St., Ste. **201**
> Boerne, TX 78006

2. The fax number for Rogers & Moore, PLLC has an incorrect area code in Appellants' statement. The correct number is:
> (866) 786-4777 (this is a toll free number)

3. Ross S. Elliott's correct email address is ross@rogersmoorelaw.com.

4. Kelly P. Rogers is added as appellate counsel. Her bar number is 00788232, and her email address is kelly@rogersmoorelaw.com.

5. Trial Court: Bandera County was redistricted during this case.

| 2012-2013 | 2013-present |
|---|---|
| Hon. Keith Williams | Hon. M. Rex Emerson and Hon. Keith Williams (by assignment) |
| 216th Judicial District Court | 198th Judicial District Court |
| Bandera County, TX | Bandera County, TX |

# Table of Contents

Identity of Parties & Counsel Supplemented..................................................2

Index of Authorities.............................................................................6

Citations to the Record........................................................................11

Statement of the Case .........................................................................12

Reply to Issues Presented .....................................................................15

Statement of Facts ............................................................................16

    A.  Basic Facts...............................................................................16

        1. Redus Point - A Subdivision on Medina Lake................................16

        2.  An Express Easement Reserves to Plaintiffs the Right to Use and
        Enjoy the Beachfront in Redus Point .................................................18

        3.  Defendants Have No Viable Claim of Ownership to the Easement
        Land .......................................................................................22

        4.  The Lances Wrongfully Attempted to Prevent Plaintiffs from Using
        Their Express Easement .................................................................23

    B.  Course of the litigation.................................................................24

Summary of the Argument.......................................................................27

Argument......................................................................................29

    A.  The Summary Judgment Evidence .................................................29

        1. The Exhibits Admitted at the Temporary Injunction Hearing .......29

        2.  Defendants' Untimely Offer of Evidence Was Rejected .................31

    B.  Defendants were Not Entitled to Use a Bogus Deed to Exclude
    Plaintiffs from their Easement of Use and Recreation ...........................32

        1.  The Summary Judgment Evidence Conclusively Established that
        Neither the Franks nor the Lances Had a Right of Possession to the .
        282-acre Tract.............................................................................33

        2.  The Deed Without Warranty is a Cloud and Burden on Plaintiffs'

Easement Rights .................................................................34

  3.  Defendants' Arguments Against the Court's Authority to Grant Relief Have No Merit .......................................................35

      a.  Trespass to Try Title is Not Necessary to Determine that Defendants' Deed Without Warranty is Invalid and a Burden on Plaintiffs' Easement ............................................36

      b. Plaintiffs are Aggrieved Parties, and Clearly Have Standing to Bring this Suit ....................................................40

      c.  The Trial Court Did Not Make a Determination of Title in Holding the DWW Conveyed No Interest ........................43

C.  Plaintiffs' Express Easement to Use and Enjoy the .282-Acre Tract was Conclusively Established ...............................................43

  1.  The 1917 Spettle Deed is Not Void ....................................44

  2.  Plaintiffs Have an Appurtenant Easement by Reservation Which Runs with the Land and Burdens Property Conveyed to MVICO in 1917.............................................................................46

  3.  The Express Easement in the Spettle Deed is Valid for a Host of Reasons .........................................................................48

      a.   The Easement Satisfies the Statute of Frauds.........................48

      b.  The Easement has a Dominant and Servient Estate .................50

      c.  The Easement is an Easement Appurtenant .............................51

      d.  The Easement Language is Explicit............................................51

      e. No Rights are Being Implied ........................................................51

      f.  The Easement Runs with the Land and Plaintiffs are Entitled to Enforce their Rights against Any Servient Estate Owner ..............52

D.  Summary Judgment was Proper on Elements of Plaintiffs' Chapter 12 Claims that were Conclusively Established.............................................52

E. The Attorney's Fee Award is Based on Sufficient Evidence of Reasonable and Necessary Fees, and the Award is Equitable and Just..56

  1. Defendants Have Waived their Complaints Regarding the Fee Award .................................................................................56

  2. The trial court was presented with sufficient evidence that the fees were reasonable and necessary; the court's award was equitable and

just ..............................................................................................59

Prayer ...........................................................................................65

Certificate of Compliance .........................................................66

Certificate of Service..................................................................66

Appendix A ..................................................................................67

# Index of Authorities

## <u>Cases</u>

*Adamson v. Doornbos,*
587 S.W.2d 445 (Tex. Civ. App. 1979, no writ)...............................................38

*Anderson v. McRae,*
495 S.W.2d 351 (Tex. App.—Texarkana 1973, no writ)...............................40

*Bexar-Medina-Atascosa Counties Water Improvement District No. 1
v. Wallace*, 619 S.W.2d 551 (Tex. App.—San Antonio 1981,
writ ref'd n.r.e.) ......................................................................................44-45

*Bocquet v. Herring,*
972 S.W.2d 19 (Tex. 1998)...............................................................................59

*Cass v. Stephens,*
156 S.W.3d 38 (Tex. App.—El Paso, 2004, pet. denied)...............................57

*Centurion Planning Corp. v. Seabrook Venture II*, 176 S.W.3d 498 (Tex.
App.—Houston [1st Dist] 2004, no pet.) .....................................................54

*City of China Grove v. Morris,*
No. 04-10-00763-CV, 2011 WL 5869629, 2011 Tex. App. LEXIS 9260
(Tex. App.—San Antonio, Nov. 23, 2011, pet. denied) .................................63

*City of Dallas v. Bargman,*
207 S.W.3d 926 (Tex. App.—Dallas 2006, no pet.)......................................35

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005)........................................................................59, 61

*City of Mission v. Popplewell,*
294 S.W.2d 712 (Tex. 1956)............................................................................37

*City of San Antonio v. Earnest*, 188 S.W.2d 775 (Tex. 1945) .................33-34

*Cornick v. Arthur,*

73 S.W. 410 (Tex. Civ. App.—Austin 1903, no writ) ....................................38

*De Arrellano v. State Farm Fire & Cas. Co.,*
191 S.W.3d 852 (Tex. App.—Houston [14th Dist.], 2006, no pet.)...............57

*Drye v. Eagle Rock Rd,* 364 S.W.2d 196 (Tex. 1952) .............................50-51

*Elliott v. Moffett,*
165 S.W.2d 911 (Tex. Civ. App.—Texarkana 1948, writ ref'd w.o.m.) ..........43

*Fairfield Fin. Group, Inc. v. Synnott,*
300 S.W.3d 316 (Tex. App.—Austin, 2009, no pet.) ...................................63

*Frost v. Mischer,*
463 S.W.2d 166 (Tex. 1971)......................................................................38

*Gillett v. Van Horne et al.,*
36 S.W.2d 305 (Tex. Civ. App.—El Paso 1931, writ dism'd) .........................37

*Gordon v. West Houston Trees, Ltd.,*
352 S.W.3d 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ...............38, 55

*Greenwood v. Lee,*
420 S.W.3d 106 (Tex. App.—Amarillo 2012, pet. denied) ........................47-8

*Howard v. Davis,*
6 Tex. 174 (1851) .....................................................................................35

*Howard v. Young,*
210 S.W.2d 241 (Tex. Civ. App.—Amarillo 1948, writ ref'd n.r.e.).........35, 40

*Hollar v. Jowers,*
310 S.W.2d 721 (Tex. Civ. App.—Eastland 1958, writ ref'd n.r.e.) ...............35

*Inman v. Padrezas,*
540 S.W.2d 789 (Tex. App.—Corpus Christi 1976, no pet.) ........................39

*Korenek v. Korenek,*
 No. 13-07-00111-CV, 2008 WL 2894906, 2008 Tex. App. LEXIS 5652
(Tex. App.—Corpus Christi, July 29, 2008, no pet.) ...................................64

*Krabbe v. Anadarko Petroleum Corp.*,
46 S.W.3d 308 (Tex. App.—Amarillo, 2001, pet. denied) ............................58

*Lance v. Robinson*, No. 04-09-00476-CV, 2013 WL 820590, 2013 Tex.
App. LEXIS 2163 (Tex. App.—San Antonio, March 6, 2013, no pet.)
(mem. op.) ........................................................................13, 24, 40, 42, 53

*Lopez v. Morales*,
No. 04-09-00476-CV, 2010 WL 3332318, 2010 Tex. App. LEXIS 6909
(Tex. App.—San Antonio 2010, no pet.) (mem. op.) ..............................40-41

*Lopez v. State Farm Mut. Auto. Ins. Co.*, No. 13-06-276-CV,
2008 WL 2744609, 2008 Tex. App. LEXIS 7643 (Tex. App.—Corpus
Christi, June 30, 2008, no pet.)(mem. op.) ...................................................57

*McMahon v. Fender*,
350 S.W.2d 239 (Tex. Civ. App.—Waco 1961, pet. ref'd, n.r.e.) ...................38

*Manning v. Enbridge Pipelines*,
345 S.W.3d 718 (Tex. App.—Beaumont 2011, pet. denied) .........................37

*Maritime Overseas Corp. v. Ellis*,
971 S.W.2d 402 (Tex. 1998) ...................................................................59, 62

*Martin v. Amerman*,
133 S.W.3d 262 (Tex. 2004).........................................................................63

*Menczer v. Poage*,
118 S.W. 863 (Tex. Civ. App. 1909)..............................................................39

*Nobles v. Marcus*,
533 S.W.2d 923 (Tex. 1976)......................................................................40-41

*Pena v. Zardenetta*,
714 S.W.2d 72 (Tex. App.—San Antonio 1986, no writ) ..............................37

*Placke v. Lee-Fayette Counties W.C.I.D. #1*,
NO. 03-04-00096-CV, 2005 WL 1034075, 2005 Tex. App. LEXIS 3411
(Tex. App.—Austin 2005, pet. denied) (mem. op.) ..................................46, 49

*Pouns v. Zachery,*
103 S.W. 234 (Tex. Civ. App.—Austin 1907, no writ) ...................................38

*Roberson v. City of Austin,*
157 S.W.3d 130 (Tex. App.— Austin 2005, pet. denied)........................38, 63

*Rogers v. Ricane Enterprises, Inc.,*
884 S.W.2d 763 (Tex. 1994)........................................................................38

*Smith v. Reid,*
No. 04-13-00550-CV, 2015 Tex. App. LEXIS 6387 (Tex. App.—San Antonio 2015, Rule 53.7(f) motion filed) (mem. op.) ...........................................48, 51

*Sorsby v. State,*
624 S.W.2d 227  (Tex. App.—Houston [1st Dist.] 1981, no writ) .................34

*Stark v. Morgan,*
602 S.W.2d 298 (Tex. Civ. App.—Dallas 1980, no writ)..............................31

*Temple Trust Co. v. Logan,*
82 S.W.2d 1017 (Tex. Civ. App.–Amarillo 1935, no writ)...........................35

*United States v. Denby,*
522 F.2d 1358 (5th Cir. 1975)......................................................................17

*Valadez v. Avitia,*
288 S.W.3d 843 (Tex. App.—El Paso, 2007, no pet.)...................................59

*Vernon v. Perrien,*
390 S.W.3d 47 (Tex. App.—El Paso Oct. 24, 2012, pet. denied) ..................39

*Vinson v. Brown,* 80 S.W.3d 221 (Tex. App.—Austin 2002, no pet.)..........46

*Wilhoite v. Sims,*
401 S.W.3d 752 (Tex. App.—Austin, 2013, no pet.) .........................36, 43, 64

## Statutes and Rules

Tex. Civ. Prac. & Rem. Code § 12.001 ..........................................................42

Tex. Civ. Prac. & Rem. Code § 12.002 .................................................53, 54, 55

Tex. Civ. Prac. & Rem. Code § 12.003 ....................................................42, 53

Tex. Civ.Prac. & Rem. Code § 37.009 .............................................59, 63, 64

Tex. Prop. Code § 22.001 .......................................................................36

Tex. R. App. P. 33.1.................................................................................58

Tex. R. App. P. 38.1 .................................................................................58

Tex. R. Civ. P.74 ..................................................................................29-30

Tex. R. Civ. P 75 ...................................................................................30

Tex. R. Civ. P. 166a ..............................................................................34

Tex. R. Civ. P. 783..............................................................................36, 37

## Citations to the Record

**"CR"** is used to refer to the clerk's record. Because the record does not contain all relevant filings, Appellees intend to supplement the clerk's record and will so indicate in this brief.

**"RR AF"** is used to refer to the reporter's record from the attorney's fee trial on September 17, 2014, presided over by Judge Emerson, and filed in this Court by Appellants.

**"RR MSJ"** is used to refer to the reporter's record from the motion for summary judgment hearing held on May 28, 2013, presided over by Judge Williams.

**"RR Exhibits"** is used to refer to the Exhibits admitted in the Temporary Injunction hearing on July 16, 2012, presided over by Judge Williams.

**"RR Rehearing"** is used to refer to the reporter's record from the hearing on May 30, 2014 on the motion for rehearing of the summary judgment, presided over by Judge Williams.

## Statement of the Case

Appellees, Judith and Terry Robinson, Brenda and Gary Fest, Virginia Gray, and Butch Townsend ["Plaintiffs"] sued Appellants John and Debra Lance, and F.D. and Helen Franks ["Defendants"]. RR Exhibits PX1. Bexar-Medina-Atascosa Counties Water Control and Improvement District No. 1, referred to as BMA or Intervenor, intervened in the case.[1] RR MSJ 4.

The case arose from Defendants' use of a deed without warranty ["DWW"] to attempt to exclude Plaintiffs from .282 acre of land adjacent to Defendants' property on Medina Lake. The disputed area is owned by BMA, which operates Medina Lake, and Plaintiffs have an express easement to use the property to access the lake and build structures for recreation. Plaintiffs sued Defendants for injunctive and declaratory relief and damages.[2] RR Exhibits PX1.

The case originated in the 216th District Court, presided over by Judge Keith Williams. Id. He granted a temporary injunction after an evidentiary hearing. CR 55-166. That injunction was the subject of an interlocutory appeal to this Court by the Lances; this Court ruled in

---

[1] The Clerk's Record will be supplemented with BMA's plea in intervention.

[2] The Clerk's Record will be supplemented with the live petition at the time of summary judgment. That petition (Fifth Amended) is also attached to Appellants' Brief at App. I.

Plaintiffs' favor. *Lance v. Robinson*, 2013 WL 820590 (Tex. App.—San Antonio, March 6, 2013, no pet.), Appellant's App. H.

Plaintiffs then filed a motion for partial summary judgment. CR 44-51. Defendants filed their own motion for summary judgment.[3] After a hearing, Judge Williams granted Plaintiffs' motion, and Defendants filed a motion for rehearing. CR 182-219. After another hearing, Judge Williams modified the judgment and issued an amended order on June 11, 2014. CR 412-16. The court declared that Defendants had no ownership rights in the .282 acre tract, and their DWW constituted a cloud on Plaintiffs' easement rights. Plaintiffs and the Lances both have express easement rights to use and enjoy the land at the lake's edge below the flow line of the lake. The court also found that Defendants used the DWW to create an appearance of ownership, in violation of Texas Civil Practices and Remedies Code Chapter 12. CR 412-14.

The summary judgment issues were severed from the rest of the lawsuit. CR 251. Plaintiffs and BMA requested attorney's fees and final judgment related to the severed claims. Id., CR 5. These requests were

---

[3] Defendants did not include this cross-motion in the record. The 1917 deeds at issue (Spettle Deed and Partition Deed) were submitted as evidence with their cross-motion.

heard by Judge M. Rex Emerson.[4] Judge Emerson rendered final judgment

for Plaintiffs and BMA, awarding them attorney's fees. RR AF, CR 37, 505.[5]

Defendants initiated this appeal.

---

[4] When the case was filed, Bandera County was in the 216th Judicial District; in 2013, after the summary judgment hearing, it was redistricted to the 198th Judicial District. Judge Williams continued to preside over matters relating to the summary judgment by assignment.

[5] The final judgment was amended to clarify that the award was subject to post-judgment interest.

# Reply to Issues Presented

1.   The summary judgment evidence was sufficiently referenced, and there was no objection to the form of the evidence. There is no substantive defect in Plaintiffs' summary judgment evidence, as it was on file at the time of the summary judgment hearing, was considered by the trial court, and is part of the record.

2.   Defendants failed to respond to Plaintiffs' summary judgment evidence with evidence demonstrating that a material issue of fact existed on any ground raised in the motion for summary judgment.

   a.   Defendants' deed without warranty on the property at issue conveyed no title, and constituted a cloud on Plaintiffs' express easement rights.

   b.   Plaintiffs have owned, used and enjoyed a valid express easement of access to the property for decades.

   c.   Because the deed without warranty conveyed no title, Plaintiffs' chapter 12 claims based on usage of a fraudulent deed are established in part as a matter of law. The essential issues of intent and damages were severed and reserved for trial.

3.   The award of attorney's fees to Plaintiffs is supported by the evidence, and is more than equitable and just, especially given Defendants' tactic of rehashing the same arguments over and over again in repetitive filings throughout this litigation. Moreover, Defendants waived their arguments relating to attorney's fees.

# Statement of Facts

## A. Basic Facts

This statement of facts incorporates all the evidence the trial court considered on the issues presented. Defendants are incorrect in their assertion that the deeds and other exhibits admitted at the temporary injunction hearing are not in the summary judgment record. Further, Defendants are wrong in stating that the trial court considered evidence they submitted a year after the court made its ruling. That evidence is not part of the summary judgment record.

### 1. Redus Point - A Subdivision on Medina Lake

This case concerns lot owners in a subdivision on Medina Lake called the Redus Point Addition Subdivision ["Redus Point"]. The subdivision is on a cove created by a peninsula extending into the lake. RR Exhibits PX7. Plaintiffs own lots 1, 2 and 3 in the subdivision. CR 89, 116, RR Exhibits PX4. The Plaintiffs' lots are bordered on the north by a steep 40-50 foot rocky cliff that plummets down to the water; the southern side of the peninsula is a gentling sloping beachfront. CR 78-79. For many years, since the 1950's, Plaintiffs and their predecessors enjoyed a section of the beachfront adjacent to or near their lots. CR 90-95, 117 (Judith Robinson has been using the area since she was a little girl, for 55 years). Plaintiffs

and their predecessors built a boat ramp on the beachfront in the 1970's, and built a deck there about fifteen years ago; they launched their kayaks from the beachfront, and picnicked and enjoyed quality time there (albeit these times are more enjoyable when there is water than when there is not). *Id.*, RR Exhibits PX2 (photos documenting usage).

Defendants are the prior owners (Franks) and current owners (Lances) of lot 8 in Redus Point. CR 133; RR Exhibits PX5, 6. Lot 8 is adjacent to the road and beachfront enjoyed and used by Plaintiffs. The beachfront land is outside the boundary of Lot 8and is the location of the disputed tract at issue in this case. RR Exhibits PX5 (DWW). Frank Franks testified that hegave the Lances a deed without warranty to .282 acre of land outside of Lot 8; he said he gave the Lances a deed without warranty because ownership of the area was disputed. CR 138-39. He admitted that he had no title to the .282 acre tract prior to creating the deed without warranty. *Id.* It thus is undisputed that the Franks never had title to the . 282 acre themselves, and Defendants never pled or offered evidence sufficient to raise any issue of fact regarding an alternate source of title in themselves such as adverse possession.[6]

---

[6] Because the land is owned by a governmental entity, BMA, adverse possession would not be a valid title source for Defendants. *See* Tex. Civ. Prac. & Rem. Code § 16.061; *United States v. Denby*, 522 F.2d 1358, 1363-64 (5th Cir. 1975) (adverse possession cannot be asserted against the sovereign).

## 2. An Express Easement Reserves to Plaintiffs the Right to Use and Enjoy the Beachfront in Redus Point

The boundaries of Redus Point subdivision are laid out to approximate the "Elevation 1084" line—the elevation above mean sea level of the top of Medina Dam—the highest level the water in the lake can reach during extreme flood conditions.[7] CR 68-71; RR Exhibits PX7. Medina Valley Irrigation Company ("MVICO"), the original owner of the lake, obtained title to lands necessary to build the lake through condemnations and voluntary conveyances of lands below Elevation 1084.[8] *Id.*

On January 22, 1917, Theresa Spettle, her daughter Mathilda Spettle Redus and five other grantors conveyed portions of their land totaling 1,568.82 acres to MVICO "[t]o be used forever as a reservoir for storing

---

[7] According to the elevation datum (baseline standard) in use at the time Medina Lake was built, the top of the dam was determined to be 1084 feet above sea level. However, based on the National Geodetic Vertical Datum (NGVD) of 1929, the top of the dam is 1076.2 feet above sea level. "Elevation 1084" is used herein to mean the elevation of the top of the dam as calculated when the dam was built and when the lands below Elevation 1084 were conveyed to the Medina Valley Irrigation Company. The level of the spillway, and the conservation pool level of the lake (the level of the water when the lake is full), is "Elevation 1072," which according to the 1929 datum is 1064.2 feet above mean sea level. *See* http://www.waterdatafortexas.org/reservoirs/individual/medina.

[8] Generally, when a lake is constructed, the owner must obtain the right to flood all lands below the top of the dam in order to avoid the risk of having to pay flood damages to owners of the lands around the lake. The shore lands of many lakes are not owned privately, they are owned by the government, typically the United States Army Corps of Engineers. For example, Canyon Lake in Comal County is a Corps of Engineers lake and much of the land surrounding the lake is owned by the Corps ("fee lands"); however, other portions of the shore lands are owned by private owners but are subject to a flowage easement. *See* www.swf-wc.usace.army.mil/canyon/Realestate/index.asp. Medina Lake is not a Corps of Engineers lake, and substantially all of the property surrounding the lake is privately owned.

water above the dam constructed by" MVICO. The tracts were described in metes and bounds. RR Exhibits PX4 at 319.

In this "Spettle Deed," the grantors—who retained ownership in the adjoining lands—granted MVICO immunity for any damages caused by flooding or submerging the lands conveyed to MVICO. *Id.*

Further, the grantors reserved an express easement of use and enjoyment in the lands conveyed to MVICO and the lake, for their benefit and the benefit of their heirs and assigns:

> But it is distinctly understood and agreed that the grantors, their heirs and assigns, herein have reserved and do hereby reserve unto themselves:
>
> (1) The right to use the waters in the reservoir for domestic purposes;
>
> (2) The right to use the waters in the reservoir for bathing, boating, fishing and hunting; and
>
> (3) The right to construct upon the edges of the reservoir at their own peril and expense and without any liability of the grantors for the destruction thereof by water or otherwise, such improvements as may be necessary and incident to the exercise of the privileges above reserved by the grantors, their heirs and assigns, which privileges are to be exercised by said parties only to the extent and in the proportion which the acreage above described bears to the total acreage under the flow line of said reservoir.

*Id.*

Several months later, on July 18, 1917, Theresa Spettle and the other grantors in the Spettle Deed partitioned their adjoining lands among

Theresa and her daughters Mathilda Spettle Redus, Pauline Spettle Holzhaus, and Mary Theresa Spettle Mangold. RR Exhibits PX4, .pdf pp. 53-61. In the Partition Deed, 728 acres of land "situated on the east side of the Medina Lake" were partitioned to Mathilda Spettle Redus. *Id.* at 560. The Partition Deed described the partitioned lands by metes and bounds; the descriptions make clear that the partitioned lands are adjacent to the lake.[9] *Id.* at 558-60.

The habendum clauses in the "Partition Deed," including the clause pertaining to the 728 acres partitioned to Mathilda Spettle Redus, expressly state that all appurtenant rights in the partitioned lands were severed and conveyed to the grantees along with the lands:

> TO HAVE AND TO HOLD the said last-above described tracts or parcels of land, with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise incident or appertaining, unto her the same Mathilda Spettle Redus, to her sole and separate use and as her separate estate, her heirs and assigns, in severalty, absolutely, in fee simple and forever.

*Id.* at 561.

The Redus Point Addition Subdivision is located on land that was part of the 728 acres partitioned to Mathilda Spettle Redus, and the Plaintiffs and the Lances as lot owners in the subdivision are assigns under the

---

[9] The tracts are bounded by "the backwater or flow-line" of the lands owned by MVICO. *See, e.g.,* RR Exhibit PX4 at .pdf p. 55 (description of 728 acres partitioned to Mathilda Spettle Redus).

Partition Deed with all the appurtenant rights held by Mathilda Spettle Redus, including the easement of use and enjoyment in the adjoining lake lands now owned by BMA as successor to MVICO. CR 75-76; RR Exhibits PX 4, 6.

At the temporary injunction hearing held on July 16, 2012, the Plaintiffs proved up their rights in the land and chain of title, assisted by the uncontroverted testimony of a registered professional land surveyor, Lemuel Sinclair. CR 16-36 All of the pertinent deeds were admitted without objection. CR 70, 77, 79. Plaintiffs placed the testimony given and the exhibits admitted at this hearing into the summary judgment record. CR 45, 50.

Sinclair testified without objection that the disputed .282-acre area is located within a 104.6-acre tract of land in Survey No. 231 that was conveyed to MVICO in the 1917 Spettle Deed. CR 70. The Redus Point Addition Subdivision is located within Survey No. 231, and specifically within the 728 acres that were partitioned to Mathilda Spettle Redus in the 1917 Partition Deed. CR 92-73. The boundaries of the subdivision are meander lines drawn to approximate Elevation 1084, the elevation of the top of the dam. *Id.* at 71. The land adjacent to the subdivision below Elevation 1084, belongs to BMA as successor to MVICO. *Id.* at 71-72.

The plaintiffs and the Lances, as owners of lots in the subdivision, are successors in title to the lands partitioned to Mathilda Spettle Redus in 1917. *Id.* at 73. A chronological list of all the deeds reviewed by Sinclair was admitted without objection. *Id.* at 77.

### 3. Defendants Have No Viable Claim of Ownership to the Easement Land

At the temporary injunction hearing, certified copies of the deed in which the Franks obtained lot 8 and the deed in which they conveyed lot 8 to the Lances were admitted in evidence. RR Exhibits PX5.[10] At the same time, the Franks gave a deed without warranty to the Lances to a .282-acre tract of land between Lot 8 and Medina Lake located below Elevation 1084, outside the boundaries of the subdivision. A certified copy of the DWW is also in the record. *Id.*

Franks had not obtained a deed to this tract from any source; the tract had not existed prior to the conveyance from the Franks to the Lances. CR 138, 143. A deed without warranty was used for the .282-acre tract, rather than a warranty deed with a promise of good title, because Frank

---

[10] The Prado to Franks deed is out of order in the record. The 3-page deed at pages 50-52 of the .pdf of the RR Exhibits volume should be between pages 80 and 81, just before the Franks to Lance general warranty deed to lot 8. The list of deeds in exhibits 4 and 5 is in exhibit 6.

Franks understood "that there might be some dispute regarding property below the 1084 line." *Id.* at 139

### 4. The Lances Wrongfully Attempted to Prevent Plaintiffs from Using Their Express Easement

After acquiring the purported deed to the .282-acre tract, the Lances began taking steps to fence off the tract and exclude their neighbors from it. John Lance sent a letter to Plaintiff Judith Robinson (owner of Lot 1) in early April 2012, telling her he was going to fence off "our property" and that if she did not move the deck within 30 days, the Lances would remove it. CR 103-04; RR Exhibits PX1 at 3 & Ex. B. The boundary of the .282-acre tract, and the fence that the Lances planned to build around the tract, cut across the deck, impeded access to the pier, and prevented use of the boat ramp. Id. at 100-02.

Judith and the other plaintiffs responded through their attorney in early May 2012, objecting to the building of the fence and asserting that the DWW was invalid and fraudulent. CR 103-04.

After receiving the letter, the Lances began building the fence. CR 104. The .282-acre tract had never been enclosed by a fence, although there was a short removable cable fence along the road on one side of the tract. Id. at 136. Without consulting any of their neighbors, the Lances pulled out the cable fence along the road and began building a permanent wooden

fence to keep people off the beachfront. Id. at 96, 124. There was a gap in the fence, but Lance stretched a cable across it to block access to the lake across the beachfront. Id. at 98. The Lances also tore a section off the pier, put up "no trespassing" signs, installed game cameras to monitor the area, and told their neighbors to stay off the tract or the Lances would call the constable. Id. at 97-98.

Not surprisingly, a dispute arose at the property and a deputy sheriff was called. John Lance showed his DWW to the deputy, and claimed that it gave him exclusive ownership of the .282-acre tract. Id. at 103. The deputy told the Lances not to block Plaintiffs' access to their pier or boat ramp. CR 102-03. To stop them from continuing to build their fence, Plaintiffs filed this lawsuit. RR Exhibits PX1. The trial court granted a temporary injunction. *See Lance v. Robinson*, 2013 WL 820590 (Tex. App.—San Antonio 2013, no pet.).

### B. Course of the litigation

After the July 17, 2012 hearing on the temporary injunction, at which expert testimony and certified copies of the relevant deeds were admitted, Plaintiffs determined they had sufficient grounds for a partial summary

judgment on requests for declaratory relief relevant to their claims. *See* RR

Exhibits PX1.[11]

Specifically, Plaintiffs moved for a declaration that they had an

express easement right to access the .282-acre beachfront at issue. Further,

they moved for a declaration that the Lances did not own the beachfront

and could not restrict Plaintiffs' access. They also moved for a declaration

that the Lances' invalid claim of ownership (the DWW) constituted a cloud

on Plaintiffs' and BMA's rights in the land. CR 44-45.

At the time Plaintiffs moved for summary judgment, Defendants'

unsuccessful interlocutory appeal from the temporary injunction order was

pending in this Court. This Court issued its opinion March 6, 2013. The

trial court ordered a hearing for May 28, 2013, at which numerous motions

were set to be held, including Plaintiffs' motion for summary judgment and

Defendants' motion for summary judgment. At the end of that four-hour

hearing, the trial court orally granted summary judgment for Plaintiffs but

stated he would not sign an order until the parties participated in another

half-day mediation (their third). RR MSJ 69-70, 77.

The mediation was unsuccessful, and Judge Williams signed a

summary judgment order on October 14, 2013. CR 182-84. Defendants filed

---

[11] Plaintiffs also refer the Court to their Fifth Amended Petition, which will be requested for the clerk's record supplement.

a motion for rehearing, and supplemented it twice over the next few months, attempting to interject new evidence before the trial court. CR 185, 262, 406. Judge Williams held a hearing on the motion for rehearing on May 20, 2014, and very carefully considered Defendants' arguments yet again. RR Rehearing. He refused to consider Defendants' late-filed evidence. RR Rehearing at 33-36. After the hearing, Judge Williams signed a modified order on June 14, 2014, striking the language that declared BMA was the owner of the disputed tract but otherwise leaving intact the original summary judgment order. CR 412.

On June 12, 2014, the summary judgment order was severed from the remaining issues in the case, save for the attorney's fees associated with the summary judgment rulings. CR 251-52. An evidentiary hearing was held on attorney's fees on September 17, 2014. RR AF. The trial court, Judge Rex Emerson, awarded Plaintiffs $90,000 in attorney's fees plus $10,000 if successful on appeal. CR 505-06. BMA was awarded $31,025 plus $10,000 if successful on appeal. *Id.* Since Defendants raise evidentiary sufficiency issues with respect to attorney's fees, the evidence and equities in support of Plaintiffs' award of attorney's fees will be discussed in response to Defendant's issues 6 and 7 in the Argument section of this Brief.

## Summary of the Argument

Summary judgment was properly granted in Plaintiffs' favor. Plaintiffs presented both conclusive and uncontroverted evidence establishing that they owned an express easement of use and recreation over lands owned by the water district below Elevation 1084 at Medina Lake. Defendants attempted to prevent Plaintiffs from using their easement rights by creating a deed without warranty out of thin air to lakefront land they did not own.

The summary judgment evidence established as a matter of law that Defendants' deed without warranty was invalid, as Franks owned no interest to convey to Lance.

Defendants' multiple and multifarious arguments represent shallow attempts to avoid these established facts: (1) Plaintiffs have an express easement, and (2) Defendants' deed without warranty is a nullity and an invalid cloud on Plaintiffs' easement. None of their legal arguments have merit; all are based on mischaracterizations of the issues in this case and the law governing the same.

Plaintiffs were awarded attorney's fees under the Declaratory Judgment Act. This award, which was drastically reduced from the amount proven up, represented reasonable and necessary fees that were equitable

and just. While Plaintiffs clearly waived error with respect to their complaints regarding the attorney's fees, the evidence is nevertheless sufficient to support the attorney's fee award.

## Argument

### A. The Summary Judgment Evidence

### 1. The Exhibits Admitted at the Temporary Injunction Hearing

Defendants' issues 1 and 2 hinge on their inaccurate claim that the summary judgment record is incomplete. Appellants' Brief at xiii. Plaintiffs' motion for summary judgment specifically referenced and relied on the testimony and exhibits admitted at the temporary injunction hearing on July 17, 2012. CR 44-166, RR Exhibits. Defendants now complain for the first time on appeal that the reference to the exhibits admitted at the hearing was improper because they were not on file and hence could not be part of the summary judgment record. To the contrary, the exhibits were on file with the court.[12] (Defendants do concede that a citation to evidence on file with the court is sufficient to support summary judgment).

Texas Rule of Civil Procedure 74 defines "filing with the court." With regard to exhibits, the rule states: "The filing of ... exhibits as required by these rules shall be made by filing them with the clerk of the court." Alternatively, a judge may permit exhibits to be filed with him to be

---

[12] At the temporary injunction hearing, Plaintiffs' expert surveyor testified regarding Plaintiffs' express easement, and certified copies of every deed at issue in the case were admitted into evidence along with a number of photographs, a large-sized plat of the lake and tax records. CR 67-88, RR Exhibits.

transmitted to the clerk. Id. Rule 75a also requires the court reporter at a hearing to file any exhibits admitted into evidence with the clerk of the court. And, Rule 75b(b) allows the court reporter to give the court clerk a receipt for the exhibits if she takes custody of them in order to fulfill her legal duties.

In this case, at the end of the temporary injunction hearing, Judge Williams asked the Lances' counsel if he wanted his exhibits back, and he said no. The judge then said, "Okay, I'm going to leave all the exhibits with the file." CR 146. That same day, July 16, the clerk of the court noted that the exhibits were filed in the court's file.[13] Tex. R. Civ. P. 74. Later, the official court reporter, Cindy Huggins, withdrew the exhibits on August 28, 2012 and was apparently in possession of them until March 28, 2013, when she returned them to the clerk.[14] The summary judgment hearing was two months later, on May 28. The record further reflects that the exhibits remained in the custody of the clerk, until they were once again withdrawn on April 16, 2015 to prepare the supplemental record for this appeal.[15]

---

[13] The Clerk's Record will be supplemented with the docket sheet showing this notation.

[14] In this timeframe, this Court will note, Defendants prosecuted their interlocutory appeal and the reporter's record from the hearing, including the exhibits, was part of the appellate record.

[15] The Clerk's Record will be supplemented with the receipts for exhibits reflecting these facts but in the meantime, a certified copy of the receipt is attached to this brief as Appendix A.

Therefore, under the rules of civil procedure, the exhibits admitted at the hearing were properly filed and Defendants' assertion that they are not in the record must be disregarded. Plaintiffs were entitled to refer to and rely on the exhibits in their motion for summary judgment. *Stark v. Morgan,* 602 S.W.2d 298, 303-04 (Tex. Civ. App.—Dallas 1980, no writ) (reference to exhibits offered at temporary injunction hearing in motion for summary judgment sufficient to put exhibits before the court).

It should also be noted that Defendants never once objected to Plaintiffs' evidence in their summary judgment response, or at the summary judgment hearing on May 28, 2013, which lasted over four hours. In fact, the record from the hearing is replete with references by the attorneys and Judge Williams to the deeds and other summary judgment evidence. RR MSJ 21, 36-38, 41-46, 54-55, 66-68, 71, 75-76. There was no confusion or question on anyone's part about the evidence the court was asked to consider in ruling on the motions for summary judgment.[16]

## 2. Defendants' Untimely Offer of Evidence Was Rejected

Plaintiffs object to Defendants' citation to this Court of evidence that was not part of the summary judgment record. After Judge Williams ruled

---

[16] In their response to Plaintiffs' motion for summary judgment, Defendants concluded: "Every claim for which Movants are seeking summary judgment should be denied based on … the transcript of the temporary injunction hearing *with exhibits*." CR 180 (emphasis added).

on Plaintiffs' motion for summary judgment, Defendants asked him to reconsider. They filed a motion for rehearing and supplemented it twice, each time adding additional evidence they wanted the trial court to consider. CR 262-411. One year and two days after the summary judgment hearing, Judge Williams had a hearing on the motion for rehearing. RR Rehearing. Plaintiffs objected to the untimely offer of evidence without a motion for leave, and the judge unambiguously sustained the objection and flatly refused to consider Defendants' evidence.[17] Id. 33-36. In their brief, Defendants summarize this excluded evidence and falsely state that the trial court considered it. Appellants' Brief at 8-9. That evidence was not admitted, and Defendants have made no complaint in this Court regarding the trial court's ruling. The evidence is not in the summary judgment record.

## B. Defendants were Not Entitled to Use a Bogus Deed to Exclude Plaintiffs from their Easement of Use and Recreation

In issue 3, Defendants complain that the trial court had no legal or factual basis to find that Defendants used a bogus deed to try to exclude Plaintiffs from using property Defendants did not own. They also assert

---

[17] The excluded evidence includes the affidavit from surveyor Mike Grogan referenced in Defendants' brief at 8-9.

(the issue is multifarious) that the court had no basis to hold that the DWW is a cloud or burden on Plaintiffs' easement. The issue should be overruled.

### 1. The Summary Judgment Evidence Conclusively Established that Neither the Franks nor the Lances Had a Right of Possession to the .282-acre Tract

The trial court's ruling, that the DWW from the Franks to the Lances was did not convey any ownership or other interest in the .282-acre tract to the Lances, was conclusively established by the summary judgment evidence and Defendants offered nothing raising a material issue of fact showing otherwise. The evidence established that Defendants created and used the DWW in a deliberate attempt to exclude others from accessing land Defendants did not own. The evidence further established that the Franks only had title to Lot 8, that the.282 acre lay outside Lot 8 within the land conveyed to MVICO in the Spettle Deed, and thus the Franks had no claim to the .282 acre prior to creating the DWW out of thin air. CR 128-29. After Franks made the deed up, the Lances used it to justify building a fence to exclude Plaintiffs from their boat dock, destroy Plaintiffs' deck, and keep Plaintiffs from using their recreational improvements on the lakefront below Elevation 1084.

In *City of San Antonio v. Earnest*, the defendants used a fraudulent deed in a scheme to gain title to part of Laredo street; the Supreme Court

found that the fraudulent deed was "an absolute nullity." 188 S.W.2d 775, 778 (Tex. 1945). An absolute nullity is not merely voidable, rather it is void. *Id.* It follows, and the court found, that there was no need for an absolute nullity to be set aside. *Id.* As a nullity the fraudulent deed did not convey any title and was properly addressed by a suit to quiet title. *Id.*

The evidence in this case also conclusively established that the .282 acre tract was in fact owned by BMA, not by Defendants. The trial court deleted that ruling from its summary judgment order, CR 413-14, however no evidence was offered to controvert the expert testimony that BMA was the successor to MVICO and acquired all title to lands below Elevation 1084 conveyed to MVICO in the Spettle Deed. A summary judgment based on an expert witness' testimony will be sustained if the testimony is uncontroverted, clear, positive and direct, and could have been readily controverted. Tex. R. Civ. P. 166a(c); *Sorsby v. State*, 624 S.W.2d 227, 233 (Tex. App.—Houston [1st Dist.] 1981, no writ).

## 2. The Deed Without Warranty is a Cloud and Burden on Plaintiffs' Easement Rights

Defendants' complaint in issue 3 — that the trial court had no legal or factual basis to hold that the deed without warranty constituted a cloud and burden on Plaintiffs' easement rights — must be rejected. Plaintiffs have carefully read Defendants' brief and the only place they brief this particular

point is on page 29, where Defendants summarily state that "a deed cannot be a cloud on an easement." To the contrary, Texas courts have recognized a cause of action in equity to remove a cloud on an easement. *See, e.g. City of Dallas v. Bargman*, 207 S.W.3d 926 (Tex. App.—Dallas 2006, no pet.) and *Howard v. Young*, 210 S.W.2d 241 (Tex. Civ. App.—Amarillo 1948, writ ref'd n.r.e.) (cases involving equitable claims of cloud on easement rights or cloud on "title" to an easement).

The elements of a suit to quiet title, or remove a cloud on title, are: (1) the plaintiff has an interest in the property; (2) the title to the property is affected by a claim of the defendant; and (3) the defendant's claim, although facially valid, is actually invalid or unenforceable. *Howard v. Davis*, 6 Tex. 174, 185 (1851); *Temple Trust Co. v. Logan*, 82 S.W.2d 1017, 1020 (Tex. Civ. App.—Amarillo 1935, no writ). Each element was conclusively established in this case, and the trial court correctly held that Defendants' bogus deed without warranty clouded Plaintiffs' interest in their easement.

### 3. Defendants' Arguments Against the Court's Authority to Grant Relief Have No Merit

Despite the conclusive evidence supporting the trial court's rulings relating to the deed without warranty, Defendants argue the trial court did not have authority to make the rulings. First, they argue Plaintiffs had to

bring this case as a trespass to try title action. Second, they argue that only the grantor can seek to have a deed set aside. And third, they argue that ownership of the .282 acres remains in dispute, hence the trial court could not rule that Defendants did not have an ownership interest

### a. Trespass to Try Title is Not Necessary to Determine that Defendants' Deed Without Warranty is Invalid and a Burden on Plaintiffs' Easement

Defendants have expended much energy on their argument that the trial court did not have the authority to rule on Plaintiffs' requests for relief because Plaintiff failed to bring this action as a trespass to try title. *See* Tex. Prop. Code 22.001(a), Tex. R. Civ. P. 783. Trespass to try title is the method for determining title to real property. However, when a person makes up a deed, like Defendants did in this case, a party negatively affected by that deed does not need to bring a suit in trespass to try title to prove that the deed is fake. *Wilhoite v. Sims*, 401 S.W.3d 752, 759 (Tex. App.—Dallas 2013, no pet.) (issue in the case was whether the quitclaim deed was voidable, not whether defendant's title was superior to plaintiff's; suit was proper under the declaratory judgment act).

Plaintiffs' right to use and enjoy their express easement was negatively affected by Defendants' invalid claim to the easement property. Because Plaintiffs had an easement, a non-possessory interest, a trespass to

try title claim was not available to Plaintiffs. *Pena v. Zardenetta,* 714 S.W. 2d 72, 73 (Tex. App.—San Antonio 1986, no writ) (easement is a non-possessory right). Only a party in possession or a party entitled to possession of property can file a trespass to try title claim. Tex. R. Civ. P. 783(d). Easement rights are properly adjudicated, as they were and will be in this case, through petitions for declaratory relief,  injunctive relief, and/ or claims for damages.

The Texas Supreme Court made this clear nearly sixty years ago in *City of Mission v. Popplewell,* 294 S.W.2d 712 (Tex. 1956). The Court held an easement can be defended against interference through an injunction, but not through trespass to try title:

> The plaintiff in a trespass to try title must allege and prove the right to present possession of the land. The owner of an ordinary easement does not have such a possessory right and the remedy is not available to him.  Injunction is the proper remedy.

*Id.* at 714. This has been the consistent rule in Texas for over a century.  The following cases reiterate that injunctive or declaratory relief are the proper vehicles to defend an easement, not trespass to try title: *Manning v. Enbridge Pipelines,* 345 S.W.3d 718, 726-27 (Tex. App.—Beaumont 2011, pet. denied) (declaratory judgment appropriate to defend easement, not trespass to try title); *Gillett v. Van Horne et al.,* 36 S.W.2d 305, 306 (Tex. Civ. App.—El Paso 1931, writ dism'd) (trespass to try title not an

appropriate remedy to determine an easement interest, declaratory judgment is); *Pouns v. Zachery,* 103 S.W. 234 (Tex. Civ. App.—Austin 1907, no writ) (declaratory judgment is the proper remedy to protect an easement); *Cornick v. Arthur*, 73 S.W. 410, 411 (Tex. Civ. App.—Austin 1903, no writ) (easement owner cannot maintain a trespass to try title claim against the owner of the land); *Roberson v. City of Austin,* 157 S.W.3d 130, 136 (Tex. App.— Austin 2005, pet. denied) (easement is non-possessory property interest and, generally, the remedy of trespass to try title has not been applied to non-possessory property interests such as easements).

Another reason it was not necessary for Plaintiffs to pursue relief in trespass to try title is that Defendants' deed without warranty does not raise an issue of title. A quitclaim deed raises no presumption of ownership, and does not put title into issue so as to invoke trespass to try title. *See McMahon v. Fender*, 350 S.W.2d 239, 240-41 (Tex. Civ. App.—Waco 1961, pet. ref'd, n.r.e.); *Adamson v. Doornbos,* 587 S.W.2d 445, 447-78 (Tex. Civ. App. 1979, no writ); *Frost v. Mischer*, 463 S.W.2d 166, 168 (Tex. 1971, no writ); *Rogers v. Ricane Enterprises, Inc.,* 884 S.W.2d 763, 769 (Tex. 1994). In such a case, injunction is an appropriate remedy. *McMahon*, 350 S.W.2d at 240-41; *Gordon v. West Houston Trees, Ltd.,* 352 S.W.3d 32, 46 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (creditor's recovery affirmed on its

claims for quiet title and declaratory judgment with respect to quitclaim deed and amended warranty deed); *Inman v. Padrezas,* 540 S.W.2d 789, 792 (Tex. App.—Corpus Christi 1976, no pet.) (declaratory and injunctive relief was appropriate when defendants claimed a quitclaim deed permitted them to obstruct public easement); *Vernon v. Perrien,* 390 S.W.3d 47, 2012 Tex. App. LEXIS 8851, *8-9 (El Paso Oct. 24, 2012, pet. denied) (court has jurisdiction to grant declaratory judgment declaring quitclaim deed "null and void" and removing cloud on title, even if trespass to try title applies; claim to remove cloud on title or to quiet title is a separate claim); *Menczer v. Poage,* 118 S.W. 863 (Tex. Civ. App. 1909) (injunction appropriate remedy when defendant attempted to fence in land claimed under deed without warranty). The Lances' DWW is no evidence of ownership, prima facie or otherwise.

Further, Defendants failed to acknowledge the extremely broad scope of the Court's equitable power to quiet title. Unlike a trespass to try title claim, "[a] suit to quiet title relies on the invalidity of the defendant's claim to the property. It exists to 'enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of a better right.'" *Vernon*, 390 S.W.3d 47. An easement owner may ask a court to quiet title and remove a cloud that is interfering with use

of the easement. See, e.g., *Anderson v. McRae*, 495 S.W.2d 351, 356, 360-61 (Tex. App.—Texarkana 1973, no writ) (subdivision lot owners entitled to seek quiet title through declaratory judgments act for recreational easements in areas adjacent to lake); *Howard v. Young*, 210 S.W.2d at 241-43 (quiet title and injunctive relief were appropriate remedies when an easement's dimensions and validity were at issue).

### b. Plaintiffs are Aggrieved Parties, and Clearly Have Standing to Bring this Suit

Citing *Nobles v. Marcus*, 533 S.W.2d 923 (Tex. 1976) and *Lopez v. Morales*, 2010 WL 3332318, 2010 Tex. App. LEXIS 6909 (Tex. App.—San Antonio 2010, no pet.) (mem. op.), Defendants argue that only a grantor has standing to bring suit to set aside a deed procured by fraud.

The test for whether a party has standing is whether "a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome." *Lopez*, 2010 Tex. App. LEXIS at *7. As this Court has already recognized, Plaintiffs in this case have an ownership interest in an easement over the land purported to be conveyed by the invalid deed. *Lance*, 2010 WL 820590, *5. Further, BMA, who actually does have title, is in this case as a necessary party. All parties were before the trial court, and the court had authority to grant the relief requested with respect to the DWW. *See Hollar v. Jowers*, 310 S.W.2d 721 (Tex. Civ. App.—Eastland

1958, writ ref'd n.r.e.) (plaintiff in suit to set aside deed must have "some interest" in relevant property; all necessary parties with an interest must be joined).

Defendants' reliance on *Nobles* and *Lopez* is misplaced. *Nobles* obviously did not rule that only a grantor can sue to set aside a fraudulent deed. Instead, *Nobles* stands for the unremarkable proposition that only a person who has been defrauded can sue for fraud. "A suit to set aside a deed obtained by fraud can only be maintained by the defrauded party." *Nobles,* 533 S.W.2d at 927. The plaintiff in *Nobles* was not the defrauded party but the creditor of the defrauded party who was attempting to step into the shoes of the defrauded party.[18] *Id.* *Nobles* does not address a scenario where a grantor and grantee draw up an invalid deed with the intent to defraud a third party, which is the situation in this case.

This Court in *Lopez* also held, citing *Nobles*, that only the actual party defrauded could bring a suit to set aside a deed. 2010 Tex. App. LEXIS 6909 *8. The deed at issue, which was procured by fraud (lack of consideration) from a holder of a 1/9th interest in the relevant property, purported to convey all of the property to the defendant. The *Lopez* court found that a holder of another 1/9th interest did not have standing to bring

---

[18] The plaintiff could have asserted a statutory claim for fraudulent conveyance, but failed to plead such a claim. *Id.* at 925, 927.

suit to set aside the deed based on fraud because the grantor was the only one who was cheated out of his property. The Court pointed out that the deed, no matter what it purported to convey, could only convey whatever interest the grantor had, which was a 1/9th interest, and thus the deed did not affect the plaintiff's 1/9th interest. *Id.* at *11. In this case, Plaintiffs' ownership interest in their easement is affected by the invalid DWW. BMA's interest is also affected. Both parties clearly have standing to bring this suit.

Defendants made the same argument regarding Plaintiffs' standing to this Court in the first appeal. *Lance v. Robinson*, 2013 WL 820590 at *4 ("The Lances repeatedly assert that Appellees have no claim under the Franks deed and no right to set it aside.") In response, this Court held, correctly, that an easement is a real property interest, and that a holder of an easement interest has standing to seek injunctive relief under section 12.003(a)(8). *Id.* at 5; Tex. Civ. Prac. & Rem. Code § 12.001, et. seq. (allowing a person who holds an interest in real or personal property to bring a claim against one who makes, presents or uses a fraudulent claim against real or personal property in order to cause them to suffer injury). Defendants did not appeal this Court's decision. Since this Court has already specifically addressed Defendants' standing argument, there is no

need to revisit the issue now. *Elliott v. Moffett*, 165 S.W.2d 911, 912 (Tex. Civ. App.—Texarkana 1948, writ ref'd w.o.m.)(questions of law decided by a court of ultimate resort govern the case through all subsequent stages of the proceeding).

### c. The Trial Court Did Not Make a Determination of Title in Holding the DWW Conveyed No Interest

Defendants mischaracterize the trial court's summary judgment ruling in arguing that he made a determination of title while the ownership of the .282-acre tract "remained in dispute." Appellants' Brief at 19-21. The trial court expressly declined to rule that BMA had title to the .282-acre tract. CR 412 at ¶ 3. Next, the trial court's declaration that the bogus DWW was ineffective to convey any interest in the .282-acre tract to the Lances was permitted under both the declaratory judgment act and equitable claims of removal of a cloud on Plaintiffs' interest. The trial court did not adjudicate, as between two parties with a possessory right, who had the superior right of possession. *Wilhoite*, 401 S.W.3d at 759.

### C. Plaintiffs' Express Easement to Use and Enjoy the .282-Acre Tract was Conclusively Established

In issue 4, Defendants urge this Court to invalidate Plaintiffs' long-standing, long-utilized express easement of use and enjoyment of the .282-

acre tract for "a host of reasons." However, their arguments should be dismissed by this Court as summarily as they are made.

### 1. The 1917 Spettle Deed is Not Void

Defendants argue that the 1917 Spettle Deed is void based on this Court's holding in *Bexar-Medina-Atascosa Counties Water Improvement District No. 1 v. Wallace*, 619 S.W.2d 551 (Tex. App.—San Antonio 1981, writ ref'd n.r.e.). Defendants have not requested relief setting aside the Spettle Deed. Even assuming that the validity of the Spettle Deed is properly before the Court, Defendants mirepresent this Court's holding in *Wallace*. They claim that *Wallace* stands for the general proposition that every deed bearing similar language to the deed at issue in that case is void. This is decidedly not the holding of *Wallace*.

*Wallace* involved a 1917 deed to MVICO, BMA's predecessor in title, but it was not the Spettle Deed that reserved the easement at issue in this case: different deed, different land. The court held that BMA had failed to prove a sufficient description of a 13.76-acre tract of land, because it was unclear where the starting point of the metes and bounds description ("point 2") was located on the ground. BMA's surveyor failed to show that the deed contained sufficient information to permit location of the point on the ground with reasonable certainty. *Id.* at 554-55. Whatever the fate of

the 13.76-acre tract in *Wallace,* the case says nothing about the sufficiency of the property description at issue in this case.[19] However, the case does recognize that BMA is MVICO's successor in title, and that the dividing line between BMA land and adjoining private lands is the "high water mark" of Elevation 1084; to this extent the case is instructive. *Id.* at 552 & nn.1, 2; 553.

Contrary to Defendants' intimation, the description in the Spettle Deed is not insufficient because it's language permits the contours of the property conveyed to MVICO to be located on the ground. Mr. Sinclair's uncontroverted testimony at the temporary injunction hearing identified the purpose of the Spettle Deed as the creation of a reservoir. CR 70. He also stated that he was able to determine the boundary line for BMA's property by referring to the top of the dam (elevation 1084'). CR 71-72. Both the purpose of the grant and the geographical marker, the dam, are

---

[19] In *Wallace,* the problematic tract, is referred to as being "off of the South side of Survey No. 288 -- E. Pennington", and is described by metes and bounds as follows: Beginning at point '2', thence: N. 3 deg. 50' E. 250' N. 16 deg. 55' W.126' . . . S. 80 deg. 54' W.1231' to point of beginning." *Id.* at 553. In this case, Lem Sinclair testified at the temporary injunction hearing that the Redus Point subdivision is adjacent to a 104.6-acre tract, which is described in the deed as: "104.5 acres, more of less, of land off the west end of Survey No. 231 Adams, Beaty & Moulton, Medina County, Texas, more particularly described by metes and bounds as follows:— Commencing at point "01", thence ... to place of beginning." CR 70, RR Exhibit PX4 at 316. Defendants have not controverted Mr. Sinclair's testimony or otherwise identified any issue with the property descriptions relevant to this case. The reference in the Spettle Deed description to the "west end" is more specific than the "south side" reference in the *Wallace* deed. End is a fixed point, whereas a point on a "side" or a "line" may need further description to locate oit on the ground.

referenced in the language of the Spettle Deed. PX4 (page 319 of the deed). Even if there is a deficiency in the calls contained in the Spettle Deed, the summary judgment evidence more than adequately demonstrated that the deed's language permitted a surveyor to ascertain the boundaries of the grant. *Placke v. Lee-Fayette Counties W.C.I.D. #1,* NO. 03-04-00096-CV, 2005 WL 1034075, 2005 Tex. App. LEXIS 3411, *8-15 (Tex. App.—Austin May 5, 2005, pet. denied) (citing *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.)) (note that Tex. Prop. Code § 5.021, the statute of frauds applies to both easements and grants). The evidence demonstrated that the boundary of the Spettle Deed could be located on the ground using the very language of the deed, it is not void for lacking a description of the land.

### 2. Plaintiffs Have an Appurtenant Easement by Reservation Which Runs with the Land and Burdens Property Conveyed to MVICO in 1917

Plaintiffs have an express easement originating in the 1917 Spettle Deed from Theresa Spettle et al. to MVICO. RR Exhibits PX 4 .pdf 44-49. Defendants erroneously assert that this deed is not in Plaintiffs' chain of title. The Spettle Deed reserved an express easement to use the lands conveyed to MVICO (now owned by BMA) which the owners of lots in the

Redus Point Addition subdivision, including the Plaintiffs and Defendants, now own as successors in title.

The testimony of Lemuel Sinclair, expert surveyor for the Plaintiffs, establishes that the Spettle Deed is in Plaintiffs' chain of title. CR 69-77. Defendants offered no evidence contradicting Sinclair's expert testimony. Defendants' assertion that Sinclair testified that the Spettle Deed was not in the Plaintiffs' chain of title is imaginary and not supported by the record.

Defendants have cited no case supporting their assertion that Plaintiffs' express easement by reservation is not in their chain of title. The cases they cite for the proposition that a purchaser is bound by every instrument in their chain of title do not support this argument. Even if the express easement was "outside" Plaintiffs' chain of title (which it is not), that does not mean it is not a binding contract as between the owners of the land below Elevation 1084 and Plaintiffs. No purchaser of the servient estate is claiming they did not have notice of the express easement because they could not find it in their own chain of title.

The other case cited by Defendants, *Greenwood v. Lee*, 420 S.W.3d 106 (Tex. App.—Amarillo 2012, pet. denied), also does not support Defendants' position. The Amarillo court of appeals in fact relied on the old 1964 deed to determine the scope of the express easement in that case, and

did not rely on the easement holder's current 2009 deed alone. *Id.* at 113. The scope of the easement by reservation owned by Plaintiffs is set out in the Spettle Deed, the easement passed to the heirs and assigns of the grantors. *Smith v. Reid*, 2015 Tex. App. LEXIS 6387 *27-28 (Tex. App.— San Antonio 2015, Rule 53.7(f) motion filed) ("heirs and assigns" language evidences intent for covenant to run with the land). Plaintiffs are successors in interest to the Spettle grantors' easement by reservation. Defendants offered no evidence showing a lack of intent on the part of the parties to the Spettle Deed to have the easement run with the land. Plaintiffs were entitled to summary judgment confirming their express easement.

### 3. The Express Easement in the Spettle Deed is Valid for a Host of Reasons

Defendants next toss out a "host of reasons" they claim Plaintiffs' express easement is invalid, like so much word salad.  Appellants' Brief at 25-29.

### *a.  The Easement Satisfies the Statute of Frauds*

Defendants worry that the language of the easement is insufficient to satisfy the statute of frauds due to an inadequate description. Their concern is misplaced. As long as the tract of land that will be burdened by the easement is sufficiently identified, it is unneccessary for the express

easement to contain an exact designation of its location. *Placke*, 2005 Tex. App. LEXIS 3411, *8-13.

In this case Defendants have not demonstrated any defect in the descriptions in the Spettle Deed. The contours of the burdened estate are clear—the relevant boundary of the entire conveyance is Elevation 1084. CR 20. The first four pages of the deed (315-318) constitute detailed metes and bounds property descriptions. Then at the top of page 319, the deed states:

> To be used forever as a reservoir for storing water above the dam constructed by the Medina Valley Irrigation Company across the Medina River below **said lands**, for use in the maintenance and operation of the Irrigation System heretofore constructed by the Medina Valley Irrigation Company and now in use by it, and the right to submerge any or all lands by backing water from its dam over **said lands**; the grantors covenant and agree to forever hold said grantee, its successors and assigns harmless from all claims, demands or damages to them growing out of incident to such use of the **above described lands** or the flooding of the same with waters.  But it is distinctly understood and agreed that the grantors, their heirs and assigns herein have reserved and do hereby reserve to themselves...[the right to use the waters in the reservoir and the right to construct upon the edges of the reservoir such improvements necessary to enable them to enjoy the waters].

RR Exhibits PX4 at 319 (.pdf p. 48). The bracketed language is the easement language. It is simply false to state that the express easement does not reference a property description or identify its location. The easement attaches to any land between Elevation 1084 and the reservoir that was conveyed to MVICO in the Spettle Deed, and described by metes

and bounds. There is no uncertainty concerning which land is subject to the easement; it is the "said lands," "above described lands," and the "acreage above described." CR 70. As stated earlier herein with respect to the Spettle Deed, the description of the land conveyed to MVICO is sufficient to statisfy the statute of frauds. This Court must resist Defendants' urging to strike the entire deed and easement based on a faint possibility that one call regarding one tract might be off. The easement is sufficiently described.

### b. *The Easement has a Dominant and Servient Estate*

The dominant estate is the land held by the Spettle Deed grantors adjacent to the lands conveyed to MVICO (the lake). The servient estate is the land conveyed to MVICO. As the Court in *Drye v. Eagle Rock Rd.*, 364 S.W.2d 196 (Tex. 1952), cited by Defendants, explained:

> The easement attaches to the land of the dominant estate and not merely for the convenience of the owner thereof independent of the use of his land. The servient estate is subject to the use of the dominant estate to the extent of the easement granted or reserved. It generally takes the form of a negative easement: the owner of the servient estate simply may not interfere with the right of the owner of the dominant estate to use the servient estate for the purpose of the easement.

*Id*. at 207. Defendants have pointed to no case requiring magic words such as "dominant" and "servient" in the creation of an express easement.

### c. The Easement is an Easement Appurtenant

Plaintiffs' easement is an express easement appurtenant to the land belonging to the Spettle grantors and their assigns to land adjacent to the land below Elevation 1084 conveyed to MVICO in the Spettle Deed. It is not an easement in gross or a license. The Court in *Drye* recognized that a right to go on land for pleasure and recreation can be: (1) a license, (2) an easement in gross, *or* (3) "an easement appurtenant to the land, a right which is attached to the land itself and passing with it." *Id*. at 203. Defendants mentioned (1) and (2) but not (3) in their three sentence argument on this point. Appellants' Brief at 27-28. As explained earlier, the "heirs and assigns" language makes clear that the easement was intended to be appurtenant to the land and run with the land. *Smith,* 2015 Tex. App. LEXIS 6387 *27-28.

### d. The Easement Language is Explicit

Defendants next complain that the trial court's ruling did not contain the terms or location of the easement. The terms of the easement are contained in the trial court's ruling at paragraph 4, and track the language in the Spettle Deed. The particular location at issue in this case is the .282-acre tract, as paragraph 6 of the ruling states. CR 413.

### e. No Rights are Being Implied

Plaintiffs did not move for summary judgment on an implied easement claim. The trial court's rulings do not mention implied easement rights, hence any question of implied easement rights is not before this Court. This seems to be an argument regarding the scope of the express easement. This argument, like most of the "host of reasons" arguments is inadequately briefed and is waived.

### f. The Easement Runs with the Land and Plaintiffs are Entitled to Enforce their Rights against Any Servient Estate Owner

Defendants have yet to cite a case that supports their argument that the lack of express easement language in Plaintiffs' recent deeds somehow extinguishes the easement. Again, the language of the easement clearly indicates that it is an easement appurtenant, running with the land. The Plaintiffs' deeds each expressly state they take their property "to have and to hold the above described premises, together with all and singular the rights and appurtenances in anywise belonging…" RR Exhibits PX4, Deeds 7, 8, 9 (listed on PX6).

## D. Summary Judgment was Proper on Elements of Plaintiffs' Chapter 12 Claims that were Conclusively Established

Defendants' fifth issue pertains the the declarations the trial court made with respect to Plaintiffs' claims under Texas Civil Practices and Remedies Code chapter 12. This Court discussed the cause of action under

chapter 12 in its first opinion in this case. *Lance*, 2013 WL 820590 *3-5 & n.3. As it applies in this case, Chapter 12 makes it unlawful for a person to "make, present, or use a document or other record" with (1) knowledge that the "document or other record is a fraudulent lien or claim against real or personal property or an interest in real or personal property," (2) intent that the "document or other record be given the same effect as a court record ... evidencing a ... claim against real or personal property or an interest in real or personal property, and (3) intent to cause a person to suffer physical, financial, or emotional injury. *Id.* at n.3; Tex. Civ. Prac. & Rem. Code § 12.002(a)(1)-(3).

The trial court made the following declarations: (1) the DWW is a "deed or other record" for purposes of section 12.002(a); (2) Defendants used and/or presented the DWW with intent to create the appearance of actual conveyance of ownership in the disputed area pursuant to section 12.002(a)(2); and (3) Plaintiffs own an express easement in the disputed area and have standing under section 12.003(a)(8).

The summary judgment evidence conclusively established these declarations and Defendants submitted no evidence raising a material issue of fact otherwise. With respect to standing, this Court has already ruled that Plaintiffs have standing as a person who owns an interest in real or

personal property to bring a chapter 12 claim based on an easement right. The DWW constitutes a deed or other record for purposes of section 12.002(a). This is self-evident and there is no proof to the contrary. Section 12.002 "expressly applies to any document or record that is 'a fraudulent lien or claim' against real or personal property and that is intended to be 'given the same legal effect' as a court record or document 'evidencing a valid lien or claim against real [or personal] property.'" *Centurion Planning Corp. v. Seabrook Venture II,* 176 S.W.3d 498, 505 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In this case, the evidence is undisputed that Defendants used the DWW to create the appearance of ownership with the same legal effect as a properly filed and recorded deed. CR 98, 102-03. Franks' admission at the temporary injunction hearing that there had never been any conveyance to him of the .282-acre tract (i.e., that the DWW was created out of thin air, as the Court observed[20]), that Franks had never paid taxes on the disputed area, CR 113-14, 143, and the fact that Defendants not only filed and recorded the DWW but used it to claim ownership to a sheriff's deputy, proves that the Defendants made, presented and used the invalid deed.

---

[20] "I do not believe a person can just, out of thin air, create ownership." CR 140.

Defendants complain on appeal that a DWW can never convey an "appearance of ownership" because by definition the grantor makes no promise of title. However, chapter 12 claims apply to any document that has no legal effect, yet is presented as if it did. Tex. Civ. Prac. & Rem. Code § 12.002. A chapter 12 claim may only be maintained if the document at issue has no legal effect, like a void deed. *See Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 46-47 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quiet title and chapter 12 claims asserted against quitclaim deed which purported to convey a tract of land in which the grantor had no interest). As in *Gordon*, Plaintiffs in this case allege that a deed which passed no interest to the grantee was used in a fraudulent manner with the intent to injure. *Id.*

While the trial court refrained from finding that Defendants used the DWW in a fraudulent manner, the undisputed evidence is that they unabashedly recorded and displayed the DWW in an attempt to force Plaintiffs to abandon their easement. They relied on the DWW to justify destruction of Plaintiffs' improvements on the easement. Further, the DWW conveyed no interest in either Defendant as a matter of law—because Franks, despite his protestations that he wasn't sure if BMA owned the land below Elevation 1084, had *no possessory interest to convey* to the Lances.

This is undisputed. Whether they had requisite fraudulent intent is an issue reserved for a jury. The trial court had discretion to make rulings by way of summary judgment on certain elements of Plaintiffs' claims.

**E. The Attorney's Fee Award is Based on Sufficient Evidence of Reasonable and Necessary Fees, and the Award is Equitable and Just**

In issues 7 and 8, Defendants attack the trial court's award of attorney's fees to Plaintiffs. However, they  have waived their legal and factual sufficiency arguments relating to the attorney's fee award; moreover, the evidence presented to the trial court was more than adequate justification for the fee award.  The central issues resolved by the summary judgment: 1) whether Plaintiffs held an easement over the disputed tract and 2) the validity of Defendants' DWW were both proper declaratory judgments and their resolution permits the award of attorney's fees under the Declaratory Judgment Act.

**1. Defendants Have Waived their Complaints Regarding the Fee Award**

Defendants have failed to challenge the trial court's findings of fact and conclusions of law, did not raise their complaints regarding the award pursuant to the declaratory judgment act at the trial level, and inadequately briefed their legal and factual sufficiency complaints.  ~~This Court must accept the trial court's findings of fact as true in the event it does not~~

~~conclude Defendants have waived their complaints regarding attorney's~~

~~fees on appeal.~~

The trial court issued findings of fact and conclusions of law pertaining to the bench trial of Plaintiffs' and BMA's attorney's fees in this case. CR 515-516. When findings of fact and conclusions of law are present in the record, they must be specifically attacked on appeal lest they bind the appellate court. *Cass v. Stephens*, 156 S.W.3d 38, 77 (Tex. App.—El Paso, 2004, pet. denied); *Lopez v. State Farm Mut. Auto. Ins. Co.*, No. 13-06-276-CV, 2008 WL 2744609, 2008 Tex. App. LEXIS 7643 *19 (Tex. App.—Corpus Christi, June 30, 2008, no pet.) (mem. op.); *De Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.], 2006, no pet.). Defendants do not cite to the findings of fact and conclusions of law in their brief. They do not discuss the findings they challenge and do not discuss how the evidence relates to the findings with any specificity. Appellants' Brief at 31-36. This Court should accept the findings of fact and conclusions of law as true in light of Defendants' waiver.

Defendants also complain that the declaratory judgment claims resolved by summary judgment in this case are merely disguised trespass to try title claims, for which attorney's fees may not be recovered. Defendants'

Brief at 36.    This complaint was first raised on appeal; Defendants' numerous and forceful complaints at the trial level did not bring this issue to the trial court's attention.    They have waived this issue on appeal. *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 320-21 (Tex. App.—Amarillo, 2001, pet. denied); Tex. R. App. P. 33.1(a).

Defendants' waiver extends beyond the findings of fact and encompasses their argument against attorney's fees generally as a result of inadequate briefing.  Tex. R. App. P. 38.1(i).  The transcript of the bench trial held on Plaintiffs' and BMA's attorney's fees takes up 136 pages which memorialize extensive testimony from attorneys Stephan Rogers, Edward Hecker, and Cynthia Payne.    Several exhibits were admitted as well. Defendants direct this Court to just seven pages from this record.[21] Appellants' Brief at 35.    These cursory citations relate only to BMA's evidence, and Defendants present no analysis regarding the evidence presented to the trial court in the cited pages.  *Id.*  Defendants' failure to adequately direct this Court to the portions of the bench trial record which support its legal and factual insufficiency arguments invites this Court to conduct an independent review of the record, impermissibly becoming

---

[21] Of the pages cited from the bench trial record, three relate to an objection made by Defendants that the trial court did not rule on.  RR AF 25-27.

Defendants' advocate. *Valadez v. Avitia*, 288 S.W.3d 843, 845 (Tex. App.—

El Paso, 2007, no pet.).

**2. The trial court was presented with sufficient evidence that the fees were reasonable and necessary; the court's award was equitable and just**

At the bench trial held September 17, 2014, Plaintiffs and BMA presented evidence in support of their claims for attorney's fees, including itemized invoices. This evidence, with every reasonable inference indulged in favor of the trial court's determination, supports the judgment; it is legally sufficient. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The evidence is also factually sufficient; the trial court's judgment is not against the overwhelming weight of the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). The trial court's determination that the attorney's fee award pursuant to Texas Civil Practice & Remedies Code § 37.009 was reasonable, necessary, equitable, and just was well within its discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

Plaintiffs' lead counsel, Stephan B. Rogers, testified to the attorney's fees they incurred. Mr. Rogers testified to the total amount of Plaintiffs' legal bill, and estimated that 85% of the work related to the issues resolved in the summary judgment order severed into cause number

CV-12-0100209. RR AF 34-36. Mr. Rogers rounded his estimate down to $140,000.00. RR AF 36. He explained that this number resulted from the extraordinary amount of work that had been put into the case, given Defendants' unflagging and voluminous briefing, their incessant motions for rehearing, and their overall dedication to proving that you can draw a deed out of thin air. RR AF 37-41. Further, he prognosticated regarding the likely costs for both this appeal ($30,000) and any later review by the Texas Supreme Court. RR AF 36-37. The underlying fee invoices were admitted into evidence. RR AF 91, PX 3.

When Defendants cross-examined Mr. Rogers, the only challenge they brought to the amount came through the introduction of a settlement offer they sent over near this case's inception. RR AF 57, DX1. Defendants contrasted their offer of $34,000 for a license over the disputed tract to the bill presented to Plaintiffs for the legal cost of defending their easement over the disputed tract and the valuable improvements threatened by Defendants' DWW. RR AF 52-59. The trial court correctly concluded the comparison did not flatter Defendants.

Edward Hecker, attorney for BMA, bolstered Mr. Roger's testimony. Mr. Hecker presented the legal bills incurred by BMA. RR AF 68-76, IX 1.

He also supported Mr. Rogers' explanation of why the case had been so costly: the sheer volume of Defendants' pleadings. RR AF 70-75.

Finally, the Defendants contested Mr. Rogers' and Mr. Hecker's testimony through Cynthia Payne, their counsel. Mrs. Payne testified that 25-30 hours of work at $150-200 per hour would be a reasonable fee for summary judgment over an express easement. RR AF 99-100. She further testified that Plaintiffs' attorney's fees were unreasonable in light of Defendants' settlement offer. RR AF 106-07.

On cross examination, Mrs. Payne indicated that Defendants had spent more than $30,000 on the lawsuit. RR AF 113. Her explanation for why this number is so low is quite reasonable; she does not read every filing or review every case cited by the parties. RR AF 15-20. Her commendable efforts to save her clients money extends to her briefing as well, where she makes a practice of reusing older motions when appropriate. RR AF 120. She also conceded that the license Defendants' offered in settlement was based on a void deed (colorfully described by Mr. Hecker as a "bill of goods"). RR AF 109.

With inferences favoring Plaintiffs and BMA, the evidence before the trial court was legally sufficient to support the attorney's fee award. *City of Keller*, 168 S.W.3d at 827. The billing records and testimony presented by

Plaintiffs supported an award of $140,000 with $30,000 in the event of an appeal along with added costs for a petition for review.  6 RR 34-36.  The trial court ultimately awarded Plaintiffs $90,000 in attorney's fees for trial, $10,000 for an appeal, and $5,000 for a petition for review despite the fact that the evidence supported a larger award.  BMA's more modest award was similarly justified as discussed in its brief.

The evidence presented by Defendants contesting the fee award was hardly overwhelming; the fee award was factually sufficient.  *Maritime Overseas*, 971 S.W.2d at 406-07.  At most, Mrs. Payne's testimony established what would be an appropriate fee for her work on a motion for summary judgment pertaining *only* to an express easement.  RR AF 99-100.  Further, her estimate was likely depressed by her concern for minimizing her client's costs. RR AF 15-20.

While the amount testified to by Mrs. Payne was considerably less than the fees incurred by Plaintiffs and BMA, this case pertained to far more than a simple express easement. While Plaintiffs quieted title in their easement by way of summary judgment, they also secured a declaration from the trial court that Defendants' DWW was invalid.  CR 44-49.  Crucially, this declaration was meant to protect Plaintiffs' property on the disputed tract, which Defendants threatened to destroy based on their

claim to own the disputed tract. RR TI 40-53, RR Exhibits PX1. Mrs. Payne's testimony demonstrated a range of reasonable fees for a portion of the relief pleaded for and obtained by Plaintiffs, but it provided no guidance with regard to the remainder of the work performed in the case. It does not overwhelmingly demonstrate that the fee award was unreasonable.

Furthermore, the fee award was equitable and just. Attorney's fees are appropriately awarded pursuant to the declaratory judgment act for both determining a deed's validity, quiet title, and defending an easement so long as the lawsuit is not essentially a trespass to try title claim. Tex. Civ. Prac. & Rem. Code § 37.009; *Fairfield Fin. Group, Inc. v. Synnott,* 300 S.W.3d 316, 323 (Tex. App.—Austin, 2009, no pet.). When a declaratory judgment is used to determine a party's rights under a deed pertaining to a non-possessory interest in land, an attorney's fee award is appropriate. *Roberson v. City of Austin*, 157 S.W.3d 130, 136-37 (Tex. App.—Austin, 2005, pet. denied) (discussing the effect of *Martin v. Amerman,* 133 S.W. 3d 262, 264 (Tex. 2004) on cases where title is not at issue and concluding the Declaratory Judgment Act may be used to interpret how a deed affects rights to an easement lest part of the act be rendered meaningless); *accord City of China Grove v. Morris*, No. 04-10-00763-CV, 2011 Tex. App. LEXIS 9260, *2-10 (Tex. App.—San Antonio, Nov. 23, 2011, pet. denied). Another

use for declaratory judgment is declaring a deed invalid or void; again, attorney's fees are appropriate pursuant to § 37.009. *Korenek v. Korenek*, No. 13-07-00111-CV, 2008 Tex. App. LEXIS 5652, *14, 2008 WL 2894906 (Tex. App.—Corpus Christi, July 29, 2008, no pet.) (mem. op.); *Wilhoite*, 401 S.W.3d at 759-60 (noting that a suit for cancellation of a deed, in the absence of a conveyance, was not equivalent to trespass to try title). Plaintiffs have not asked for, nor has there been an award of, title to the disputed tract; this case does not sound in trespass to try title. The award of attorney's fees was justified under § 37.009.

The trial court considered Plaintiffs' and BMA's discussion of their arduous path to judgment in this case. Indeed, the record of this case stands as a testament to the complexity of the arguments raised by the parties and the tenacity of Defendants. The trial court properly considered the record and found that the fee award was reasonable and necessary; the law makes it clear that the award was equitable and just.

## Prayer

Plaintiffs request that this Court affirm the judgment of the trial court in all respects, and award Plaintiffs their attorney's fees and court costs. Plaintiffs further request any other relief to which they have shown themselves justly entitled.

Respectfully submitted,

// Stephan B. Rogers
Texas Bar No. 17186350
Kelly P. Rogers
Texas Bar No. 00788232
Ross S. Elliott
Texas Bar No. 24080685
ROGERS & MOORE PLLC
309 Water St., Suite 201
Boerne, TX 78006
(830) 816-5487
Fax: (866) 786-4777
*steve@rogersmoorelaw.com*
*kelly@rogersmoorelaw.com*
*ross@rogersmoorelaw.com*

## Certificate of Compliance

I certify, pursuant to TRAP 9.4 that the number of words used in this document, not including the contents excluded by Rule 9.4(i)(1), according to the word count of the computer program used to prepare the document, is 11,723.

// Kelly P. Rogers

## Certificate of Service

I certify that a copy of this brief was served on the following persons pursuant to the Texas Rules of Appellate Procedure on July 15, 2015.

Dan Pozza
Law Office of Dan Pozza
239 E. Commerce Street
San Antonio, TX 78205
(210) 226-8888 – Phone
(210) 224-6373 – Fax
danpozza@yahoo.com

Edward Hecker
GOSTOMSKI & HECKER
607 Urban Loop
San Antonio, Texas 78204
ed@ghlawyers.net

// Kelly P. Rogers

# Appendix A

# RECEIPT FOR EXHIBITS

## CAUSE NOCV-12-209

JUDITH AND TERRY ROBINSON             IN THE DISTRICT COURT OF
GARY & BRENDA FEST, VIRGINIA GRAY
AND BUTCH TOWNSEND
VS.                                   THE 216TH JUDICIAL DISTRICT

JOHN A. LANCE & DEBRA L. LANCE        BANDERA COUNTY, TEXAS

On this the 28TH day of August, 2012, the following listed exhibits were received from the District Clerk of the above Court by the undersigned Cindy Huggins as follows:

| 1. | PLAINTIFF'S EXHIBIT # | 1 THRU 7 |
|----|----------------------|----------|
| 2. | DEFENDANT'S EXHIBIT # | 1 THRU 11 |
| 3. | EXHIBIT # | |
| 4. | EXHIBIT # | |
| 5. | EXHIBIT # | |
| 6. | EXHIBIT # | |
| 7. | EXHIBIT # | |
| 8. | EXHIBIT # | |

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF BANDERA
The document to which this certificate is affixed, containing 2 pages, is a full, true and correct copy of the original on file and of record in my office.
ATTEST: 7/6 2015
TAMMY KNEUPER
BANDERA COUNTY, TEXAS
BY _____ DEPUTY

Certified to be a true and correct copy.

page 1 of 2

_____              _____
Signature of individual receiving 8-28-12    Tammy Kneuper, District Clerk
                                     216th Judicial District Court
                                     Bandera County, Texas
                                     by Tina Ramos

(Received from Cindy Huggins 3/28/13 Exhibits)

THE STATE OF TEXAS AND CORRECT COPY CERTIFICATE

I CERTIFY that the foregoing is a true and correct copy of the original on file and of record in my office.

TAMMY KNEUPER
BANDERA COUNTY, TEXAS

DEPUTY

EXHIBIT INDEX

PLAINTIFFS' EXHIBITS

| NO. | DESCRIPTION | IDENTIFIED | OFFERED | ADMITTED |
|---|---|---|---|---|
| 1 | Petition and TRO | 37 | 37 | 37 |
| 2 | Photographs | 37 | 40 | 40 |
| 3 | Tax Statement | 61 | 63 | 63 |
| 4 | Set of Deeds | 16 | 17 | 17 |
| 5 | Deeds to Lot 8 | 27 | 27 | 27 |
| 6 | Chronology of Deeds | 17 | 24 | 25 |
| 7 | Plat of Redus Point | 16 | 16 | 16 |

DEFENDANTS' EXHIBITS

| NO. | DESCRIPTION | IDENTIFIED | OFFERED | ADMITTED |
|---|---|---|---|---|
| 1 | Photograph | 33 | 34 | 34 |
| 2 | Photograph | 34 | 34 | 34 |
| 3 | Photograph | 34 | 34 | 34 |
| 4 | Photograph | 34 | 34 | 34 |
| 5 | Photograph | 34 | 34 | 34 |
| 6 | Photograph | 34 | 34 | 34 |
| 7 | Photograph | 34 | 34 | 34 |
| 8 | Photograph | 34 | 34 | 34 |
| 9 | Photograph | 55 | 55 | 55 |
| 10 | Photograph | 55 | 55 | 55 |
| 11 | Tax Receipt | 73 | 73 | 73 |

Certified to be a true and correct copy.

page 2 of 2

CINDY E. HUGGINS
Official Reporter, 216th District Court
(830) 257-5063

# RECEIPT FOR EXHIBITS

## CAUSE NO.  CV-12-209

JUDITH AND TERRY ROBINSON         IN THE DISTRICT COURT OF
ET AL
VS.                              THE 198TH JUDICIAL DISTRICT
JOHN A. LANCE
ET AL                  BANDERA COUNTY, TEXAS

On this the 16TH day of  April , 2015  the following listed exhibits were received from the
TAMMY KENUPER, BANDERA DISTRICT CLERK of the above Court by the undersigned
COURT REPORTER  as follows:

**PLAINTIFF:**

| 1. | EXHIBIT # | 1 | Original Pet & APPlication for Temorary Restaining order |
|---|---|---|---|
| 2. | EXHIBIT # | 2 | Photos |
| 3. | EXHIBIT # | 3 | Statement of Account |
| 4. | EXHIBIT # | 4 | Deed Records "9" |
| 5. | EXHIBIT # | 5 | Warranty Deed |
| 6. | EXHIBIT # | 6 | Deed Chronology |
| 7. | EXHIBIT # | 7 | Map/Plat |
| ~~8.~~ | ~~EXHIBIT #~~ | ~~8~~ | |
| ~~9.~~ | ~~EXHIBIT #~~ | ~~9~~ | |
| ~~10~~ | ~~EXHIBIT #~~ | ~~10~~ | |
| ~~11.~~ | ~~EXHIBIT #~~ | ~~11~~ | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |

**RESONDENT:**

| 1. | EXHIBIT # | 1 | Photo |
|---|---|---|---|
| 2. | EXHIBIT # | 2 | Photo |
| 3. | EXHIBIT # | 3 | Photo |

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF BANDERA
The document to which this certificate is affixed, containing __2__
pages, is a full, true and correct copy of the original on file and of
record in my office.

Certified to be a
true and correct copy.

ATTEST: __7/6__ 20 __15__
TAMMY KNEUPER
BANDERA COUNTY, TEXAS
BY _____ DEPUTY

page __1__ of __2__ page



CERTIFY THIS TO BE A CORRECT COPY CERTIFICATE
STATE OF TEXAS
CLERK OF BANDERA

I hereby certify that the above is a true and correct copy of the
document to which this certificate is affixed, remaining _____
in a file or record on deposit the above to be and of
conformation my office.

_____ 20__

J. DAY KNEIPER
BANDERA COUNTY, TEXAS

DEPUTY _____

| | | | |
|---|---|---|---|
| 4. | EXHIBIT # | 4 | Photo |
| 5. | EXHIBIT # | 5 | Photo |
| 6. | EXHIBIT # | 6 | Photo |
| 7. | EXHIBIT # | 7 | Photo |
| 8. | EXHIBIT # | 8 | Photo |
| 9. | EXHIBIT # | 9 | Photo |
| 10. | EXHIBIT # | 10 | Photo |
| 11. | EXHIBIT # | 11 | Escrow Receipt |
| 12. | EXHIBIT # | 12 | |

_____
Signature of individual receiving
Paula Richards, Court Reporter
198th Judicial District Court

_____
Tammy Kneuper, District Clerk
198th Judicial District Court

Certified to be a
true and correct copy.

page 2 of 2 a b